# THE STATE v. CANTWELL et al., Appellants.

### Division Two, February 1, 1904.

1. **Legislative Enactment**: TITLE: PURPOSE. It is not necessary for the Legislature, in the title of an act, to designate the reasons which brought about its enactment. The evils it is intended to remedy are to be deduced from the provisions of the act itself.

2. ———: PRESUMPTION OF VALIDITY. The Legislature is presumed to have been as careful to observe the requirements of the Constitution in enacting a statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a doubt.

3. ———: PUBLIC HEALTH: POLICE POWER. The preservation of the health and safety of its citizens is one of the highest and most important duties of the State. And the Legislature has authority, in the exercise of its police power, to make all needful regulations in the conduct and management of a business which is attended by danger to the health or safety of the employees.

4. ———: PROHIBITING THE WORKING OF MINERS MORE THAN EIGHT HOURS A DAY: CONSTITUTIONAL. The Act of March 23, 1901 (Laws 1901, p. 211), prohibiting the working of laborers underground more than eight hours a day, is a valid exercise of the police power of the State. The fact that the act applies only to the class of underground laborers who search for minerals does not render it class legislation, since it operates equally on all who come within that class.

5. **Right to Contract**: LIMITATION: POLICE POWER: INEQUALITY OF PARTIES. The right of parties to contract is subject to the limitations which the State may lawfully impose in the exercise of its police power. This right does not deprive the State of its authority to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself.

6. **Expert Witness**: CAN NOT DETERMINE VALIDITY OF ACT. The validity of a statute enacted in the exercise of the State's police power can not be made dependent upon the opinions of experts as to the necessity for such enactment.

Appeal from Madison Circuit Court.—*Hon. R. A. Anthony*, Judge.

AFFIRMED.

*Harry J. Cantwell, E. D. Anthony* and *Edward D'Arcy* for appellants.

(1)    Liberty includes the right to acquire property, and that means and includes the right to make and enforce contracts.   State v. Loomis, 115 Mo. 307; Ritchie v. People, 155 Ill. 98; Forer v. People, 141 Ill. 171; Commonwealth v. Perry, 155 Mass. 117; In re Jacobs, 98 N. Y. 98; Leep v. Railroad, 58 Ark. 407.   (2) Laws, therefore, interfering with the right of employer and employee, to contract in regard to terms of service in a lawful business, are void, unless they can be upheld as coming within the police power of the State. State v. Loomis, 115 Mo. 307; Commonwealth v. Perry, 155 Mass. 117, 28 N. E. 1126; State v. Goodwill, 33 W. Va. 179; Godcharles v. Wigeman, 113 Pa. St. 431; State v. F. C. Coal & Coke Co., 33 W. Va. 188; Ritchie v. People, 155 Ill. 98; Cooley Const. Lim. (6 Ed.), 744-5. "Liberty of Contract Under the Police Power," Judson, 25 Am. Law. Rev. 871; Low v. Rees Printing Co., 41 Neb. 127; 1 Tiedeman on State & Fed. Control, p. 335; Wheeling B. & T. Co., v. Gilmore, 1 Ohio Dec. 390; In re Eight-Hour Bill, 21 Colo. 29; Ex parte Kuback, 85 Cal. 274; McCarty v. Mayor, 96 N. Y. 1; In re Morgan, 26 Colo. 415; Slaughter House Cases, 83 U. S. 36; Smith's "Wealth of Nations," b. 1, ch. 10, pt. 2.   (3)    But the police power of the State is founded upon the maxim: "So use your own so as not injure others." It can not be invoked to prevent a man from injuring himself. Knapp v. Kansas City, 48 Mo. App. 493; In re Morgan, 26 Colo. 415; Thorpe v. Railroad, 27 Vt. 140; State v. Goodwill, 33 W. Va. 185; Cooley Const. Lim. (6 Ed.), p.

710; Wheeler v. Stock Yards, 66 Mo. App. 267; St. Louis v. Green, 7 Mo. App. 474. (4) Police measures, to be valid, must have for their object the promotion of the welfare of the general public, not merely that of an individual or individuals. The Legislature can not in the exercise of the police power, interfere with the property of one man for the benefit of another. St. Louis v. Fitz, 53 Mo. 583; St. Louis v. Roche, 128 Mo. 541; Ex parte Smith, 125 Mo. 223; Morrison v. Morey, 146 Mo. 543; State v. Greer, 78 Mo. 188; In re Morgan, 26 Colo. 415; In re Jacobs, 98 N. Y. 98; Rockwell v. Nearing, 35 N. Y. 302; People v. Phyfe, 136 N. Y. 557; 1 Tiedeman on State and Fed. Control, p. 237; Barbier v. Connolly, 113 U. S. 27; Ritchie v. People, 155 Ill. 98; Low v. Rees Printing Co., 41 Neb. 127; Lawton v. Steele, 152 U. S. 153; Drew v. Smith, 38 Cal. 325. (5) A law, moreover, which does not apply to all persons similarly situated, but which, on the contrary, allows an act prohibited to one person to be done by another under precisely similar conditions, can not be upheld as a regulation of health. In re Jacobs, 98 N. Y. 98. (6) Such a law, imposing, as it does, peculiar disabilities upon persons arbitrarily selected from a general class, is a special law and void. Where distinctions between persons are attempted, they must be founded upon natural differences. State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; Low v. Rees Printing Co., 143 Neb. 127; State v. Hoyt, 71 Vt. 59; City of Pasadena v. Stimson, 91 Cal. 238; Davis v. Clark, 106 Pa. St. 377; Railroad v. Mackey, 127 U. S. 205; Railroad v. Matthews, 174 U. S. 96; Luman v. Hitchens Bros. Co., 90 Md. 14; Ritchie v. People, 155 Ill. 98; In re Day, 181 Ill. 73; Frazer v. McConway & F. Co., 82 Fed. 257. A law, therefore, founded upon a distinction between those working under ground in search of minerals and those working under ground not in search of minerals, is unconstitutional. It makes no difference

whether the persons discriminated against be many or few, important or insignificant. Constitutions must be liberally construed, so as to uphold the principles underlying them. Railroad v. Ellis, 165 U. S. 150; Boyd v. United States, 116 U. S. 635. (7) When it is sought to uphold a law as an exercise of the police power, the courts must be able to see that the means adopted by the Legislature for carrying out its purposes, are reasonable; that they are fairly calculated to attain the end proposed, and they are not unduly oppressive upon individuals. State v. Ashbrook, 154 Mo. 385; In re Morgan, 26 Colo. 415; Lawton v. Steele, 152 U. S. 133; Lake View v. Rose Hill Cem. Co., 70 Ill. 191; Wheeling B. & T. Co. v. Gilmore, 8 Ohio C. C. 666; 1 Ohio Dec. 390; State v. Goodwill, 33 W. Va. 179; Ritchie v. People, 155 Ill. 98; In re Jacobs, 98 N. Y. 98; Mayor of Baltimore v. Redecke, 49 Md. 217; Coe v. Schultz, 47 Barb. 64. (8) While a business may be regulated so as to protect the public and those engaged therein, it is not within the power of the Legislature to either partially or totally prohibit such business, as a means of regulation. Prohibition must rest upon the unlawfulness of the business proscribed. Lake View v. Rose Hill Com. Co., 70 Ill. 191; Mayor of Baltimore v. Radecke, 49 Md. 217; Ex parte Kuback, 85 Cal. 274; Wheeling B. & T. Co. v. Gilmore, 8 Ohio C. C. 658; In re Jacobs, 98 N. Y. 98. (9) The constitutional provisions concerning "due process of law" have been violated in the act under consideration. Const. Mo., art. 2, sec. 80; Const. U. S., art. 5 of amendments; State v. Loomis, 115 Mo. 307; Ritchie v. People, 155 Ill. 98; Frorer v. People, 141 Ill. 171; Millet v. People, 117 Ill. 294. (10) The business of mining is not affected with a public interest, and the Legislature has no greater control over it than it has over other purely private enterprises. State v. Loomis, 115 Mo. 320; In re Morgan, 26 Colo. 429, Cooley on Const. Lim. (6 Ed.), p. 738. (11) The court, when

asked to uphold a law, will look not to its immediate effects alone, but to the consequences of the possible abuse of the legislative power it is asked to sanction. In re Jacobs, 98 N. Y. 98; In re Morgan, 26 Colo. 415. (12)   The tendency of the law is toward widening the sphere of contract.   U. S. v. Martin, 94 U. S. 400; Sir Henry Maine's "Ancient Law" (1 Am. Ed.), pp. 163-296; In re Morgan, 26 Colo. 430; In re Jacobs, 98 N. Y. 98; Wheeling B. & T. Co. v. Gilmore, supra.

*Edward C. Crow*, Attorney-General, and *Bruce Barnett* for the State.

(1) The court properly excluded the evidence offered by defendants to show that underground work is no more injurious than employments on the surface, and that work done in excavating for minerals is no more injurious than other underground work.   Such considerations were for the Legislature in passing the act and not for the courts in construing it; the legislative determination upon this question is conclusive on the courts.   State v. Bixman, 162 Mo. 1.   (2)   There is no merit in the contention that the statute in question impairs the obligation of contracts.   A statute can not be said to impair the obligation of contracts made after it went into effect. Lehigh Water Co. v. Easton, 121 U. S. 391.   (3)   It is clearly one of the police powers of the State to prohibit the employment of its citizens upon such terms and conditions as to impair their health.   Laws similar to the one in question have been declared constitutional. People v. Lochner, 76 N. Y. S. 396; State v. Holden, 14 Utah 96; Holden v. Hardy, 169 U. S. 366; Peacock v. Limburger, 67 S. W. 518; Ex parte Northrup, 41 Ore. 489; People v. Phyfe, 136 N. Y. 554; People v. Havnor, 149 N. Y. 204; Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383.   (4)   The statute is not unconstitutional because designed to operate on

one class only, provided it affects equally all those who come within that class.   Hamman v. Central Coal and Coke Co., 156 Mo. 232; State ex rel. v. Yancey, 123 Mo. 391; State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163; State v. Bishop, 128 Mo. 373; State v. Hathaway, 115 Mo. 36; Northwestern Masonic Aid Assn. v. Waddell, 138 Mo. 628; Barbier v. Connolly, 113 U. S. 32.   (5)   (a)   The doctrine announced by the Supreme Court of Colorado in the Morgan case is not applicable to the case at bar, for the reason that the act construed in that case made it an offense for one to contract to do work in a smelter for longer than eight hours a day, whereas the Missouri act in question makes it an offense for one to employ others to work over eight hours a day in mines.   In re Morgan, 26 Colo. 415. (b)   The Colorado act interferes with individuals in regard to their actions pertaining to their own welfare only, while the Missouri act is to prevent mine operators from conducting their business in such manner as will amount to oppression of their employees.   (6)   Every possible doubt must be construed in favor of the constitutionality of the law.   Hamman v. Cen. Coal and Coke Co., 156 Mo. 242.

FOX, J.—The defendants were jointly tried, convicted and fined twenty-five dollars each in the circuit court of Madison county in March, 1903, for working their employees in mines longer than eight hours a day in violation of the act of March 23, 1901, designated as sections 8793 and 8794 of the Revised Statutes of 1899, and found on page 211 of the Laws of 1901.

The prosecution was by information, which charges the offense to have been committed in July, 1902.

The defendants admitted that they were in charge of and operating the mine of the Catherine Lead Company, defendant Cantwell being president, Magenau, superintendent, and Edwards, mine captain; and admitted that they had knowledge at the time that their

employees were working under ground longer than eight hours out of twenty-four, in shafts 100 feet and 150 feet in depth.

The defense produced evidence to the effect that the employees worked in excess of eight hours a day under a contract entered into voluntarily by them, and not under force or compulsion from defendants.

The State proved by witnesses Frank Graham, William Laws, George Dellinger, and Monroe Smith that the men worked in the mine taking out mineral ten hours a day at the time charged in the information.

The defense questioned the constitutionality of the above-mentioned statute by an objection to the introduction of any evidence and by a motion in arrest. The objection to the introduction of evidence was as follows:

"By defendants' counsel: 'For the purpose of preserving the record, we want to object formally to the introduction of any evidence in this cause for the reasons:

" 'First, that the act upon which this prosecution is based is unconstitutional in this, that the title does not express the object of the act. That the object of the act, if within the proper exercise of the powers of the legislative body, should be entitled "An act to conserve public health." That if such an act can not be upheld as calculated to conserve public health, then it is unconstitutional and void as violative of the Federal and State Constitutions and the Bill of Rights, in this, that it denies the right to contract.

" 'Second, that it does not provide for contracts already existing and may be construed retrospective in its operation.

" 'Third, that it denies the right to gains of industry.

" 'Fourth, that it arbitrarily limits the right to contract; and

" 'Fifth, it denies the equal protection of the laws as guaranteed by the Bill of Rights; and

" 'Sixth, it is obnoxious as a special law, as it is

intended to oppress one particular line of industry, and is not equal in its operations.' ''

The defense offered to prove by witnesses N. A. Bliss and G. L. Dines, physicians of experience in practice in mining regions, and by R. D. O. Johnson, an experienced mining engineer; I. J. Pirtle, an experienced mine foreman, and H. L. Baker, who had worked thirty-four years in mines, that underground work in mines is not more injurious to the public health, or to the health of the class of men engaged, than working the same number of hours in the ordinary employments on the surface; and offered to prove by Doctor Dines that underground work excavating minerals is no more injurious than underground work of any other kind or for any other purpose; and on cross-examination of the State's witness, George Dellinger, the defense offered to show by the witness that under the ordinary rules of employment, in any occupation on the surface, ten hours was required as a day's work, stating that the purpose of the testimony offered was to show that the statute amounts to a discrimination against the mining industry.

All evidence along these lines was excluded.

The information filed in this cause, which was duly verified, is as follows:

"Thomas Holliday, prosecuting attorney within and for the county of Madison, in the State of Missouri, informs the court that Harry J. Cantwell, William Magenau and Jasper Edwards, on the — day of July, 1902, at the said county of Madison, had charge of and operated a certain mine situate in said county of Madison, known as the Catherine Lead Mines, and that they were then and there engaged in mining in said mines for minerals and valuable substance, and did then and there have in their employ and under their control for wages, and to whom wages were paid for their labor certain hands and employees, to-wit:   William Laws, Rufus Skaggs, John Hampton, George Dellinger, Mon-

roe Smith, Bud Vaughn, and others whose names are unknown to your informant, to labor, work and search in said mines in excavating beneath the surface of the earth for minerals and valuable substance, and did then and there unlawfully work said hands and employees, to-wit: William Laws, Rufus Skaggs, John Hampton, George Dellinger, Monroe Smith, Bud Vaughn, and others whose names are unknown to your informant, in said mines, to mine, search, work and labor, in excavating for minerals and other valuable substance beneath the surface of the earth at such labor and industry longer than eight hours in that said day of twenty-four hours, to-wit, longer than eight hours in the said — day of July, 1902; against the peace and dignity of the State.''

The court declared the law as follows:

''1.    You are instructed that you may find one or more of the defendants guilty, or not guilty, accordingly as you may believe the evidence will warrant.

''2.    If you believe from the evidence beyond a reasonable doubt that the defendants, Harry J. Cantwell, William Magenau and Jasper Edwards at the county of Madison and State of Missouri, on any day within one year prior to September 1, 1902, the day on which the information in this cause was filed, had charge of and operated a certain mine, known as the Catherine Lead mines, that they were then and there engaged in mining in said mines for mineral and valuable substance and as such did then and there have in their employ and under their control for wages and to whom wages were paid for their labor, certain hands and employees, mentioned in the information, or any of them, to work, labor and search in said mines    in    excavating    beneath    the    surface    for minerals    and valuable substance, and that the defendants did then and there work said hands and employees mentioned in the information, or any of them, in said mines, to mine, search, work and labor in ex-

cavating for minerals and other valuable substance beneath the surface of the earth, longer than eight hours in a day of twenty-four hours, then you will find the defendants guilty and assess against each a fine of not less than twenty-five nor more than five hundred dollars, but unless you find the above facts from the evidence you will find the defendants not guilty.

"3. The court instructs the jury that the defendants are presumed to be innocent, and it devolves upon the State to prove their guilt beyond a reasonable doubt, and unless the State has established the guilt of the defendants, as charged in the information, to your satisfaction beyond a reasonable doubt, you should give the defendants the benefit of such doubt and return a verdict of not guilty. But such a doubt, to authorize an acquittal on that ground alone, should be a substantial doubt of guilt arising from the evidence in the case and not a mere possibility of innocence."

The defendants prayed the court to instruct the jury as follows:

"1. The court instructs the jury that if they find from the evidence that the working of men beneath the surface of the earth, while searching for minerals, coal or any valuable substance is not more injurious to health and life than the working of men in other occupations upon the surface of the earth, then the act of the General Assembly of the State of Missouri, repealing sections 8793 and 8794 of the Revised Statutes of the State of Missouri of 1899, and enacting two new sections in lieu thereof, to be known as sections 8793 and 8794, approved March 23, 1901, is unconstitutional and void and in contravention of the Constitutions of the United States and of the State of Missouri, and the jury are instructed to find the defendants not guilty.

"2. The court instructs the jury that the act of March 23, 1901, does not operate or apply to persons engaged in working more than eight hours per day in making excavation beneath the surface of the earth for

other purposes than 'while searching for minerals, coal or any valuable substances,' that, therefore, said act is not intended to conserve the public health nor the health of persons ·engaged in making excavations beneath the surface of the earth, but is an act abridging the right to contract for the gains of one's industry in a lawful industry and to prevent the performance of said contract, and is unconstitutional and void because it is a special law, because the title does not express the subject and because it denies the equal protection of the laws and denies the right to the enjoyment of the gains of one's industry, and the defendants must be acquitted.

"3.   The court instructs the jury that the act of the General Assembly of the State of Missouri entitled, 'An act to repeal sections 8793 and 8794 of chapter 133 of article 2 of the Revised Statutes of Missouri of 1899, and enact in lieu thereof two new sections to be known as sections 8793 and 8794, and to prevent persons and corporations from working laborers under ground more than eight hours in a day of twenty-four hours, .and fixing eight hours as a day for such laborers, approved March 23, 1901,' under which this prosecution is brought, is unconstitutional and void, and in contravention of the Constitutions of the United States and of the State of Missouri, for the following reasons:

"First.   It seeks to deprive persons of liberty and property without due process of law.

"Second.   It fails to recognize 'all constitutional government intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design.'

"Third.   It seeks to arbitrarily and unlawfully abridge the rights of the people in disposing of their lawful property, and the jury is therefore instructed to find the defendants not guilty.

"4.   The court instructs the jury that the act of the General Assembly of the State of Missouri entitled, 'An act to repeal sections 8793 and 8794 of chapter 133 of article 2 of the Revised Statutes of Missouri of 1899, and enact in lieu thereof two new sections, to be known as sections 8793. and 8794, and to prevent persons and corporations from working laborers under ground more than eight hours in a day of twenty-four hours, and fixing eight hours as a day for such laborers, approved March 23, 1901,' is unconstitutional and void, and in contravention of the Constitutions of the United States and of the State of Missouri for the following reasons:

"First.   It is a special law 'regulating labor, trade, mining or manufacturing.'

"Second.   It is a special law in a case where a general law can be made applicable.

"Third.   It is arbitrary and unlawful class legislation.

"Fourth.   It unjustly and arbitrarily singles out a class of persons and imposes upon them restrictions from which others similarly situated are exempt.

"Fifth.   It seeks to deny to persons within the State of Missouri the equal protection of the laws.

" And the jury is therefore instructed to find the defendants not guilty.

"5.   The court instructs the jury that the act of the General Assembly of the State of Missouri entitled, 'An act to repeal sections 8793 and 8794 of chapter 133 of article 2 of the Revised Statutes of Missouri, 1899, and to enact in lieu thereof two new sections, to be known as sections 8793 and 8794, and to prevent persons and corporations from working laborers under ground more than eight hours in a day of twenty-four hours, and fixing eight hours as a day for such laborers, approved March 23, 1901,' under which this prosecution is brought, and by virtue of which plaintiff must recover, if at all, is unconstitutional and void and in contraven-

tion of the Constitutions of the United States and of the State of Missouri, for the following reasons:

"First.   Said act seeks to impair the obligation of contracts.

"Second.   It seeks to arbitrarily and unlawfully limit and destroy the right of the citizen to enter into contracts relating to legal and lawful business.

"Third.   Because it is an unwarrantable interference with and infringes both the right of employer and employees to make contracts relating to lawful business, and is obnoxious to the provisions of our Bill of Rights, which guarantees to all persons their natural and inalienable right of personal liberty and acquiring, possessing and protecting property, and the jury are therefore instructed to find the defendants not guilty.

"6.   The court instructs the jury that no evidence having been introduced that the working of men more than eight hours per day of twenty-four hours a day in making excavations beneath the surface of the earth while searching for mineral, coal or any valuable substance is more injurious to health and life than the working of men the same hours while engaged in making similar excavations for other purposes than searching for minerals, coal or any valuable substance, then the act of the General Assembly of the State of Missouri, repealing sections 8793 and 8794 of the Revised Statutes of Missouri of 1899, and enacting two new sections in lieu thereof, to be known as sections 8793 and 8794, approved March 23, 1901, is unconstitutional and void and in contravention of the Constitutions of the United States and of the State of Missouri, and the jury are instructed to find the defendants not guilty.

"7.   The court instructs the jury that no evidence having been introduced that the working of men more than eight hours per day of twenty-four hours in making excavations beneath the surface of the earth while searching for minerals, coal or any valuable substance

is injurious to the health or morals of the general public, then the act of the General Assembly of the State of Missouri, repealing sections 8793 and 8794 of the Revised Statutes of the State of Missouri, 1899, and enacting two new sections in lieu thereof, to be known as sections 8793 and 8794, approved March 23, 1901, is unconstitutional and void, and in contravention of the Constitutions of the United States and of the State of Missouri, and the jury is instructed to find the defendants not guilty.

"8. The court instructs the jury that sections 8793 and 8794 of the Revised Statutes of the State of Missouri, under which this prosecution is brought, can be sustained only as a regulation concerning the public health, and that as this object is not stated in the title of the bill, even though said act might be within the authority of the Legislature in the exercise of its police powers, yet the title of said act does not fairly embody or express such purpose, and the act is therefore unconstitutional and void, as in contravention of article four of section twenty-eight of the Constitution of the State of Missouri, and the defendants must be acquitted.

"9. The court instructs the jury that sections 8793 and 8794 of the Revised Statutes of the State of Missouri, under which this prosecution is brought, are unconstitutional and void, and in contravention of the Constitutions of the United States and of the State of Missouri, because said act is retrospective in its operation.

"10. The court instructs the jury that even though they may find from the evidence that the employees of the defendants worked more than eight hours in a day of twenty-four hours in mining for minerals, coal or other valuable substances, yet if they shall further find from the evidence that said work was voluntarily performed by said employees and that no compulsion or coercion by contract or otherwise was used by the defendants to compel them to so work more than eight hours, then the defendants must be acquitted."

Which instructions asked by the defendants were by the court refused.

The cause being submitted to the jury, they returned a verdict finding each of the defendants guilty and assessing their punishment, separately, at a fine of twenty-five dollars.

In proper time and form, defendants filed motions for new trials and in arrest of judgment, which were by the court overruled, and the cause is now before us: on appeal for review.

## Opinion.

This prosecution is predicated upon sections 8793 and 8794 (Laws 1901, p. 211), which provides as follows:

"Section 8793.   It shall be unlawful for any person or corporation engaged in mining for minerals, coal or any valuable substance, or making excavations beneath the surface of the earth while searching for minerals, coal or any valuable substance, to work their hands or employees at such labor or industry longer than eight hours in a day of twenty-four hours, and it is hereby declared that eight hours shall constitute a day for all laborers or employees engaged in the kind of labor or industry aforesaid.

"Section 8794.   Any person or persons, or corporation who shall violate any of the provisions of the preceding section shall, on conviction, be fined in a sum not less than twenty-five nor more than five hundred dollars."

This cause practically involves but one proposition: Are sections 8793 and 8794, supra, a valid exercise of the police power of the State, or are they invalid and void for the reason that they are in conflict with the organic law of this State or of the Constitution of the United States?

Doubtless the Legislature, by the enactment of the

provisions upon which this prosecution is based, proceeded on the theory that the public has an interest in the preservation of the health of all laborers engaged in work beneath the surface of the earth in search of minerals or other valuable substances.

It was not necessary for the law-making power, in the title of the act, to designate the purposes of it. The evils it is intended to remedy may be deduced from the provisions of the act itself. That the title should contain but one subject and it should be clearly expressed, by no means can be construed that the title must designate the purposes of the act. The object to be obtained by the provision of the Constitution that there shall be but "one subject and it shall be clearly expressed," was "to prevent surprise upon the law-makers by the passage of bills, the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill."

There is nothing in the title to this act which is calculated to surprise or mislead any one who may read it. The body of the act treats of the subject indicated by the title.

The provisions of this act are applicable to a particular class of persons and corporations engaged in the business of mining and searching for minerals and other valuable substances beneath the surface of the earth, and to prevent them from working their hands and laborers, in the prosecution of such work, longer than eight hours in a day.

No one can read this act and escape the conclusion that the purpose of its provisions is to protect the health of those engaged in that particular kind of work, as well as to lessen the danger which usually attends it.

Accidents are less apt to occur in the performance of a dangerous work, where the hours of labor are reasonable, than where the men are tired and exhausted from long hours of labor.

In the determination of the constitutionality of the act, now in judgment before us, we start out with that familiar and well recognized principle so clearly and aptly stated in State ex rel. v. Aloe, 152 Mo. l. c. 477:

"When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The General Assembly is presumed to have been as careful to observe the requirements of the Constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a doubt."

We are not left without light on the questions involved in this cause. In our investigations we have been materially aided by the able, fair and exhaustive presentation of this subject. All the authorities upon the controverted proposition have been collated, as well as those remotely bearing upon the subject. We will say, at the outset, that we shall not undertake to reconcile the apparently conflicting opinions, and the reasonable limits of this opinion will not permit of a review of all the cases cited by either appellant or respondent. We must be content with a discussion of the leading cases and then reach a conclusion in harmony with sound reason and in keeping with the advancement and development of this great Commonwealth.

Our first inquiry must necessarily be as to the power of the Legislature to enact a reasonable police regulation which secures the health and safety of the employees.

This court has indicated, in no doubtful expressions, its views upon this subject. In State v. Loomis, 115 Mo. l. c. 315, BLACK, J., in speaking for the court, unqualifiedly announced this rule:

"There can be no doubt but the Legislature may regulate the business of mining and manufacturing so

as to secure the health and safety of the employees, but that is not the scope of the two sections of the statute now in question.''

While that case did not present the question before us, it did involve, in a general way, the power of the Legislature to enact laws regulating the business of mining.

The same learned and esteemed judge who wrote that opinion in the Loomis case also inferentially indicates the views of the court on this subject in the case of Durant v. Lexington Coal Mining Co., 97 Mo. l. c. 65. In discussing an act of the Legislature of March 23, 1881, in respect to regulations of operating coal mines, it was said by the learned judge in the course of the discussion:

''Now the statute in question, in its many provisions, seeks to protect the health and safety of persons employed in and about mines, and whilst going in and out of them. This is its general scope and purpose, and to that end many detailed provisions and regulations are made. Among others, the cage must be furnished with guides to conduct it on slides, and with spring catches, and there must be a brake on every drum. These regulations are for the protection of persons while at work in the shaft as well as when going up and down.''

One of the highest and most important duties of the State is the preservation of the health and safety of its people. The Constitution of Missouri, article 12, section 5, provides:

''The exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State.''

That the Legislature has the power to make all needful regulations in the conduct and management of a business which is attended by danger to health or

safety of the employees, is no longer an open question. To hold otherwise would be but a humiliating confession that the framers of our Constitution had so hampered and limited the law-making power as to render it helpless and powerless in the discharge of its most important duty to the public. This view is fully sustained by all the authorities to which our attention has been called by both appellant and respondent. It is recognized in one of the leading cases cited by appellant (Ritchie v. People, 155 Ill. 98); where the court very clearly and correctly declares the law. It will be observed that in that case there is a full and unqualified recognition of the right of the State, by proper enactments, to exercise its police power. The court in that case said:

"The police power of the State is that power which enables it to promote the health, comfort, safety and welfare of society. It is very broad and far reaching, but is not without its limitations. Legislative acts passed in pursuance of it must not be in conflict with the Constitution, and must have some relation to the ends sought to be accomplished; that is to say, to the comfort, welfare or safety of society. Where the ostensible object of an enactment is to secure the public comfort, welfare or safety, it must appear to be adapted to that end; it can not evade the rights of person and property under the guise of a mere police regulation, when it is not such in fact; and where such an act takes away the property of a citizen or interferes with his personal liberty, it is the province of the courts to determine whether it is really an appropriate measure for the promotion of the comfort, safety and welfare of society."

It is apparent that if the act before us is reasonably adapted to the end and purpose for which it was enacted, and was not enacted under the guise of a mere police regulation, when it is not such in fact, then the validity of the act should be upheld.

The fact that this act is applicable only to that class of persons or corporations searching for minerals or other valuable substances beneath the surface of the earth, does not render it offensive to the provision of the Constitution directed against special or class legislation.

If the legislation operates equally upon the class distinguished it is not obnoxious to the Constitution. It is well settled that:

"Legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the subjects to which it relates." [Dent v. West Virginia (1889), 129 U. S. 124.]

The same court has held that statutes creating a different rule of liability, as applied to one class of persons, from that generally in force, do not infringe the right to "due process of law." [Railroad v. Humes (1885), 115 U. S. 512; Railroad v. Mackey (1888), 127 U. S. 205.] And the Supreme Court of this State has determined that "a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special." [State ex rel. Lionberger v. Tolle (1880), 71 Mo. 650.]

It is insisted that this act makes a distinction between those working under ground in search of minerals and those working under ground not in search of minerals.

This act only applies to the class searching for minerals; as to that class, it makes no distinction. The Legislature doubtless realized the necessity of the provisions of this act being made applicable to those in search of minerals. The operation of mines is a permanent business, lasting frequently for many years; on the other hand, the digging of a well, or the running of a tunnel, is not to be classed as a business. It is work that is completed in a comparatively short time. Hence, there was absolutely no reason or necessity for

including in the act those who might, in the construction of railroads or other work, incidentally be required to work beneath the surface of the earth.

The crucial test as to the validity of this act is narrowed down to the simple question: is the business of operating mines and searching for minerals beneath the surface of the earth, in this State, of that character which would reasonably justify the law-making power in distinguishing this class in such business, for the purposes of preservation of the health and safety of the employees engaged in such work? In the determination of this question, it is not inappropriate to refer briefly to the history of the growth of the mining industries in this country and the tendency of the legislatures of the various States to enact appropriate and reasonable laws for the preservation of the health and safety of those engaged in the operation of such work.

This State stands in the front rank in the progress and advancement made in the development of its mining industries. In harmony with the proportions to which our mining business has grown, we find full proof and recognition of this wonderful growth in the various acts of the Legislature, surrounding the operatives with all reasonable safeguards for the preservation of their health and safety.

In the Utah case (Holden v. Hardy, 169 U. S. l. c. 393), Mr. Justice Brown, speaking for the Supreme Court of the United States, in support of the reasons for sustaining the Utah act, which is similar to the one before us, very appropriately refers to the history and progress in the mining industries of this country. He says:

"While the business of mining coal and manufacturing iron began in Pennsylvania as early as 1716, and in Virginia, North Carolina and Massachusetts even earlier than this, both mining and manufacturing were carried on in such a limited way and by such primitive methods that no special laws were considered necessary,

prior to the adoption of the Constitution, for the protection of the operatives; but, in the vast proportions which these industries have since assumed, it has been found that they can no longer be carried on with due regard to the safety and health of those engaged in them, without special protection against the dangers necessarily incident to these employments. In consequence of this, laws have been enacted in most of the States designed to meet these exigencies and to secure the safety of persons peculiarly exposed to those dangers. Within this general category are ordinances providing for fire escapes for hotels, theatres, factories and other large buildings, a municipal inspection of boilers, and appliances designed to secure passengers upon railways and steamboats against the dangers necessarily incident to these methods of transportation. In States where manufacturing is carried on to a large extent, provision is made for the protection of dangerous machinery against accidental contact, for the cleanliness and ventilation of working rooms, for the guarding of well holes, stairways, elevator shafts and for the employment of sanitary appliances. In others, where mining is the principal industry, special provision is made for the shoring up of dangerous walls, for ventilation shafts, bore holes, escapement shafts, means of signalling the surface, for the supply of fresh air and the elimination, as far as possible, of dangerous gases, for safe means of hoisting and lowering cages, for a limitation upon the number of persons permitted to enter a cage, that the cages shall be covered, and that there shall be fences and gates around the top of shafts, besides other similar precautions. . . .

"These statutes have been repeatedly enforced by the courts of the several States; their validity assumed, and, so far as we are informed, they have been uniformly held to be constitutional."

So far as Missouri is concerned, it is but common knowledge that thousands of men are engaged in labor

in mining shafts, from one hundred to five hundred feet beneath the surface of the earth.    These facts were presumably in the minds of the law-makers when the act involved in this proceeding was adopted.

With this brief reference to the history of the mining industry, and in view of the peculiar conditions surrounding employees who perform the labor in the mines of this State, we are confronted with the question which is very aptly stated in the Utah case:

"Whether the Legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoliation of a particular class."

In Holden v. Hardy, 169 U. S. 366, the act involved is nearly identical with the one before us in this cause. The validity of that act was sustained and the court, in discussing the principle applicable to such legislation, said:

"The enactment does not profess to limit the hours of all workmen, but merely those who are employed in underground mines, or in the smelting, reduction or refining of ores or metals.  .These employments, when too long pursued, the Legislature has judged to be detrimental to the health of the employees, and, so long as there are reasonable grounds for believing that this is so, its decision upon this subject can not be reviewed by the Federal courts.

" While the general experience of mankind may justify us in believing that men may engage in ordinary . employments more than eight hours per day without injury to their health, it does not follow that labor for the same length of time is innocuous when carried on beneath the surface of the earth, where the operative is deprived of fresh air and sunlight, and is frequently subjected to foul atmosphere and a very high temperature, or to the influence of noxious gases, generated by the processes of refining or smelting."

It was also, during the course of the opinion in the

Holden and Hardy case, very clearly announced as to whom this law was made applicable and the reasons are fully given for such distinction of a class and the application of the law to that particular class. It was said:

"The law in question is confined to the protection of that class of people engaged in labor in underground mines, and in smelters and other works wherein ores are reduced and refined. This law applies only to the classes subjected by their employment to the peculiar conditions and effects attending underground mining and work in smelters, and other works for the reduction and refining of ores. Therefore it is not necessary to discuss or decide whether the Legislature can fix the hours of labor in other employments. Though reasonable doubts may exist as to the power of the Legislature to pass a law, or as to whether the law is calculated or adapted to promote the health, safety or comfort of the people, or to secure good order or promote the general welfare, we must resolve them in favor of the right of that department of government."

It was further very aptly stated in support of the reasons why acts of this character are to be maintained as a valid exercise of legislative power:

"The Legislature has also recognized the fact, which the experience of legislators in many States has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employees, while the latter are often induced by the fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules and the laborers are practically constrained to obey them. In such cases self-interest is often an unsafe guide, and the Legislature may properly interpose its authority."

The court also made this very appropriate suggestion:

"It may not be improper to suggest in this connection that although the prosecution in this case was against the employer of labor, who apparently under the statute is the only one liable, his defense is not so much that his right to contract has been infringed upon, but that the act works a peculiar hardship to his employees, whose right to labor as long as they please is alleged to be thereby violated. The argument would certainly come with better grace and greater cogency from the latter class. But the fact that both parties are of full age and competent to contract does not necessarily deprive the State of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. 'The State still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and when the individual health, safety and welfare are sacrificed or neglected, the State must suffer.' "

It is very earnestly insisted, in fact, the very able presentation of this case, by counsel for appellant, is principally predicated upon the contention that the law upon which this prosecution is founded infringes upon the liberty of the citizen to contract. This contention is very clearly answered by the court in Holden v. Hardy, supra, where the principle is forcibly and unqualifiedly announced that even the right to contract is subject to reasonable limitations, when the public interests demand it. This principle was thus clearly stated:

"This right of contract, however, is itself subject to certain limitations which the State may lawfully impose in the exercise of its police power. While this power is inherent in all governments, it has doubtless been greatly expanded in its application during the past century, owing to an enormous increase in the number

of occupations which are dangerous, or so far detrimental to the health of employees as to demand special precautions for their well-being and protection, or the safety of adjacent property.    While this court has held, notably in the cases of Davidson v. New Orleans, 96 U. S. 97, and Yick Wo v. Hopkins, 118 U. S. 356, that the police power can not be put forward as an excuse for oppressive and unjust legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances, and a large discretion 'is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests.'    [Lawton v. Steele, 152 U. S. 133, 136.''

It is argued by appellants that this case is not a controlling one, for the reason that it is based upon the peculiar provisions of the Constitution of that State. No one can read the case and escape the conclusion that it is a clear, full and exhaustive discussion of the principle involving the exercise of police power by the enactment of a law in all respects similar to the one before us for consideration.    While it is true reference is made to the express provisions of the Constitution of Utah, in respect to the operation of mining industries, yet the principles announced are applicable to any State where, under the Constitution, laws may be enacted in the exercise of the police power of the State.

When it is once conceded that, under the Constitution of Missouri, the State may, in the exercise of its police power, enact laws for the preservation of the health and safety of its citizens, then the principles announced in the Utah case must, beyond dispute, be equally applicable to the Constitution and laws of this State.

The principles announced in the Utah case, as well as the conclusions reached, are sanctioned by the appellate courts of New York, and in the recent case of In re Ten Hour Law for Street Railway Corporations by the

Supreme Court of Rhode Island, it was quoted approvingly in sustaining the validity of an act limiting the hours of labor for street railway employees: 54 Atl. 602.   Whhile the question was not involved, yet in the case of Atkin v. State of Kansas, by the Supreme Court of the United States, 24 Sup. Ct. .Rep. 124, Mr. Justice HARLAN, in delivering the opinion of the court, involving the validity of the eight hour law of the State of Kansas, in respect to the performance of labor for the State, county, township or any municipality, quoted approvingly what was held in the Holden and Hardy case, as to the limitations upon hours of labor in all underground mining, etc.

The recent case of People of New York v. Joseph Lochner, 73 Hun (App. Div.) 120, furnishes a very clear, full and logical discussion of the question presented in this case.   The act involved a similar question and was assailed by the defendant upon the same grounds as those urged in the case at bar.   To fully appreciate the application of the principles announced in that case, we here quote the statute assailed:

"No employee shall be required or permitted to work in a biscuit, bread or cake bakery or confectionery establishment more than sixty hours in any one week or more than ten hours in any one day, unless for the purpose of making a shorter work day on the last day of the week; nor more hours in any one week than will make an average of ten hours per day for the number of days during such week in which such employee shall work."

The court, in discussing this statute, said:

"The statute authorizes the employment of men to labor in biscuit, bread or cake bakeries or confectionery establishments not more than sixty hours in any one week or more than ten hours in any one day.   This section of the statute merely declares that ten hours' labor performed within twenty-four hours shall constitute a day's work, and no employee shall be required or permitted to work a greater number of hours for such em-

ployer.   The constitutionality of this act must be determined by the citizen's right to pursue a lawful employment.   If the restriction is arbitrary and does not pertain to the welfare and health of the people it can not be upheld.

"It was remarked by Judge Gray in People v. Ewer (141 N. Y. 132), that 'it is difficult, if not impossible, to define the police power of a State; or, under recent judicial decisions, to say where the constitutional boundaries limiting its exercise are to be fixed.'

"The police power of the State is the power which enables it to promote the health, comfort, safety and welfare of society.   It is very broad and far-reaching, but it is not without its limitations.

"The line between a valid exercise of the police power and the invasion of private rights is clearly drawn by Judge Earl in his opinion in Matter of Application of Jacobs (98 N. Y. 110).   He says: 'Generally it is for the Legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts.   But they must have some relation to these ends.   Under the mere guise of police regulations, personal rights and private property can not be arbitrarily invaded, and the determination of the Legislature is not final or conclusive.   If it passes an act ostensibly for the public health and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health.' "

Finally, in that case, as will be observed in the course of the opinion, the court takes the broad position that the statute does not restrict or prohibit any of the rights of the citizen to contract and conduct his business,

but simply regulates it.    The court says on that subject:

"The statute in question does not restrict the right of the defendant to carry on his business or to engage as many persons as he sees fit in such business, but it simply prohibits him from requiring or compelling his employees to work more than ten hours in any one day, or more than sixty hours in any one week; in other words, the statute does not prohibit any right, but regulates it, and there is a wide difference between regulation and prohibition, between prescribing the terms by which the right may be enjoyed, and the denial of that right altogether.    The defendant is not deprived of any right or privilege which is not denied to others in a similar business.    The provisions of the statute in question are directed to all persons engaged in the bakery business.    It neither confers special privileges nor makes unjust discriminations.    All who are engaged in that business are entitled to its benefit and subjected to its restrictions.    It is open to any citizen to engage in that business, and the privileges conferred belong equally to all..

"It is very important for the health of the community that bakers should supply people with wholesome bread and pure food.    The people are interested in the business; it is of so much public interest that the Legislature, under the police power of the State, may control the business by any regulation which is necessary to secure the public health.    The regulations instituted by this statute were for the purpose of protecting the health of the employees, and giving the public pure and wholesome bread and other articles of food sold by bakers."

In Commonwealth v. Hamilton Manufacturing Co., 120 Mass. 383, the validity of a statute predicated upon the same principle as the one involved in this controversy, was assailed.    The statute ruled upon in that case prohibited the employment of all persons under the age

of eighteen and of all women in laboring in any manufacturing establishment more than sixty hours per week. This statute was held valid and in so holding the court very clearly announced its views upon statutes of this character. It said:

"The law, therefore, violates no contract with the defendant; and the only other question is, whether it is in violation of any right reserved under the Constitution to the individual citizen. Upon this question, there seems to be no room for debate. It does not forbid any person, firm or corporation from employing as many persons or as much labor as such person, firm or corporation may desire; nor does it forbid any person to work as many hours a day or a week as he chooses. It merely provides that in an employment, which the Legislature has evidently deemed to some extent dangerous to health, no person shall be engaged in labor more than ten hours a day or sixty hours a week. There can be no doubt that such legislation may be maintained either as a health or police regulation, if it were necessary to resort to either of those sources for power. This principle has been so frequently recognized in this Commonwealth that reference to the decisions is unnecessary."

It will be observed in In re Morgan, 26 Col. l. c. 433, it is contended by the learned judge rendering that opinion, that the conclusions reached in Commonwealth v. Hamilton Manufacturing Co., supra, are in conflict with the later case by the same court in Commonwealth v. Perry, 155 Mass. 117. A careful analysis of the Perry case makes it clearly apparent that there is no such conflict. It neither refers to nor in any manner criticises the correctness of the conclusions reached in the Hamilton case. The same or a similar question was not involved. In the announcement of the constitutional rights of the citizen to contract and enjoy his property, we can all agree. These principles are not out of harmony with those announced in the Hamilton case. Hence, we must most respectfully withhold our concur-

rence in the view of the learned judge as to this conflict in the cases of the Massachusetts Supreme Court.

This court, in no uncertain terms, has indicated its views as to the situation and condition of miners, in the performance of labor, beneath the surface of the earth. In sustaining the validity of the law which provided for the recovery by the widow and children of a miner killed by the negligence of his employer a greater amount of damages than is provided for under the general damage act, BURGESS, J., in Hamman v. Cen. Coal & Coke Co., 156 Mo. l. c. 241, very tersely and clearly announced the views of this court on that subject. He said:

"It is of common knowledge that no class of laborers are so much exposed to danger as miners, and that none in proportion to the number engaged meet with so many fatal disasters, and the Legislature doubtless for that reason, in order to protect human life, and to prevent such occurrences as far as possible, thought that the necessity for increasing the maximum amount of damages over that fixed by law in other cases existed, in order to stimulate operators of such mines to all needful and proper precautions for their protection. Moreover 'class legislation is not necessarily obnoxious to the Constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons "who are or who may come into like situations and circumstances" is not partial.' [Humes v. Railroad, 82 Mo. loc. cit. 231.]"

The New York Court of Appeals in People v. Havnor, 149 N. Y. 195, clearly and correctly announces the true doctrine of the interest that the State should manifest in its people. The court in that case was treating of a statute prohibiting the carrying on of business of barbering on Sunday. While that case does not involve the precise question before us, it clearly indicates the importance which should be attached by the State to the preservation of the proper physical condition of its citizens, and the court very aptly announced in that case:

"It is to the interest of the State to have strong, robust, healthy citizens, capable of self-support, of bearing arms and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizens from overwork and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. Independent of any questions relating to morals or religion, the physical welfare of the citizen is a subject of such primary importance to the State, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power, and hence valid under the Constitution, which 'presupposes its existence, and is to be construed with reference to that fact.' (Village of Carthage v. Frederick, 122 N. Y. 268, 273.)

"The statute under discussion tends to effect this result, because it requires persons engaged in a kind of business that takes many hours each day, to refrain from carrying it on during one day in seven. This affords an opportunity, recurring at regular intervals, for rest, needed both by the employer and the employed, and the latter, at least, may not have the power to observe a day of rest without the aid of legislation. As Mr. Tiedeman says in his work on Police Powers: 'If the law did not interfere, the feverish, intense desire to acquire wealth. . . . inciting a relentless rivalry and competition, would ultimately prevent not only the wage-earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature and obeying the instinct of self-preservation by resting periodically from labor.' (Tiedeman's Lim. Police Powers, 181.) As barbers generally work more hours each day than most men, the Legislature may well have concluded that legislation was necessary for the protection of their health."

This principle is supported and fully sanctioned in

Ex parte Northrup, 41 Ore. 489; State v. Petit, 74 Minn. 376, and numerous other cases.

The tendency of the holdings of all the courts upon this question, after a full review of all the cases, is very aptly stated by the author in Tiedeman on State and Federal Control of Persons and Property, vol. 1, page 336.   He says:

"While it would seem to be the settled judicial opinion that it is unconstitutional for the Legislature to regulate the hours of labor by taking away all liberty of contract in the matter, where the object is merely the protection of the employee against the exaction of a disproportionate amount of work for the wages paid; the courts are disposed to hold otherwise, where the statutory regulation is intended to protect the safety of the public, or the health of the individual employee, from the dangers threatened by the excessive and exhaustive labor of the workman."

Our attention is earnestly directed by appellant to the case of In re Morgan, supra.   It must be conceded that it is a well considered case.   It is a thorough, able and clear presentation of the question involved. It must be observed, however, that it is distinguished from the case at bar in this, that the statute of which it treats and holds invalid is addressed to the regulation of the action and conduct of the individual, whereas the law with which we are dealing, is directed to the regulation and management of a business.   It, however, indicates clearly, from the discussion of the proposition, that the result of the conclusion reached would not be different, even though the statute assailed was similar to the one presented to us for consideration.   It is unnecessary to give expression to our disapproval of the principles announced in that case, until the conclusion is finally announced upon the law involving the question as contained in our statute, upon which this prosecution is based.

In Ritchie v. People, supra, to which our attention

has been directed, it will be noted that the court does not deny the right of the State, under proper conditions, to exercise its police power by the enactment of laws applicable to a particular class; but the question in that case is, as it is in every case of that character of legislation, was the law an arbitrary distinction of a class, without sufficient grounds for distinguishing the class? It was said by the court in that case:

"But there is nothing in the nature of the employment contemplated by the act which is in itself unhealthy, or unlawful, or injurious to the public morals or welfare."

To the same effect is the case of Matter of Application of Jacobs, 98 N. Y. 98. The act assailed in that case was one "prohibiting the maufacture of cigars and preparation of tobacco in tenement houses" in certain cases. It was ruled by the court in the Jacobs case that the law was unconstitutional, because it was apparent that the act did not tend to promote public health and that was not the end actually aimed at.

An examination of that case will demonstrate that it in no manner conflicts with the subsequent New York cases, which so clearly announce the principles contended for by the State. In People v. Havnor, supra, the principles announced in the Jacobs case are fully recognized; then it proceeds to make clear the right of the State to protect its citizens from overwork, in a character of business which is attended with danger to their health and safety.

The proposition is not disputed that legislation for the promotion of public health must have a reasonable relation to the end to be accomplished; if the act is a mere pretense, under the guise of police regulation, to invade the constutional rights of the citizen, it can not and should not be upheld.

But that is not this case. The Legislature of Missouri presumably had before them the conditions surrounding the prosecution of the work in the mining in-

dustries of this State, the rapid and unparalleled development of that industry, the immense amount of labor required to perform the work, the nature and character of the underground work, the depth of the mineral shafts, and the danger to the health of the employees, by reason of being confined beneath the surface of the earth. In view of this situation, we have reached the conclusion that the law-makers of Missouri, fully recognizing the duty of the State to its citizens, were reasonably justified in recognizing the necessity for additional precautions in the preservation of the health and safety of those in the performance of work beneath the surface of the earth in search of minerals or other valuable substances.

Doubtless the Legislature deemed it wise, for the protection of the numerous citizens of this State engaged in that class of work, to fix the limitation as was designated in the act. While, if it was clearly apparent that this limitation was unreasonable and arbitrary, this court would not and should not hesitate to so declare, the General Assembly is a co-ordinate branch of the State government, and while its unauthorized acts should not be sanctioned, yet the high sense of propriety would require that proper and appropriate deference to its judgment as to the necessity of legislation of this character, should be recognized.

We can not agree with learned counsel for appellant that the performance of work in underground mines is not attended with danger to health. To maintain that it is equally healthy in a deep mineral shaft, full of smoke and necessarily damp, as it is in the ordinary pursuits in the open fresh air and light, is simply a position opposed to all the natural laws of health.

This act of the General Assembly is valid, and the trial court properly refused the instructions prayed for by defendants.

There is but one remaining question. Defendants sought to introduce testimony of expert witnesses, tend-

·ing to show that the underground work contemplated by this act of the Legislature was not attended with danger to the health of those engaged in the performance of such work.   This testimony was excluded by the court, and, in our opinion, correctly so.   The validity of laws enacted in the exercise of the police power of the State can not be made dependent upon the views of experts, as to the necessity of such enactment.   If the constitutionality of all laws enacted for the promotion of public health and safety can be assailed in this manner, truly and sadly would it be declared that our laws rest upon a very weak and unstable foundation.

We have thus given expression to our views upon the constitutionality of the act of the Legislature involved in this cause.   We fully recognize the solemn duty of courts to guard the constitutional rights of the citizens against merely arbitrary power; but, on the other hand, it must be remembered, as was so aptly stated by Mr. Justice HARLAN, in the Atkin case:

"Indeed the public interests imperatively demand that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably beyond all question in violation of the fundamental law of the Constitution."

The judgment of the trial court should be affirmed, and it is so ordered.   All concur.