[Crim. No. 1539.   In Bank.—December 23, 1909.]

# In the Matter of the Application of FRED J. MARTIN for a Writ of Habeas Corpus.

LABOR LAW—REGULATING HOURS OF EMPLOYMENT OF MINERS—CONSTITUTIONAL LAW.—The act of March 10, 1909 (Stats. 1909, p. 279), entitled "An act regulating the hours of employment in underground mines and in smelting and reduction works," and limiting the period of employment therein to eight consecutive hours, is constitutional.

ID.—POLICE POWER—LIMITING HOURS OF EMPLOYMENT—OCCUPATIONS INJURIOUS TO HEALTH.—The state, in the exercise of its police power, for the preservation of the public health, may properly restrict the freedom of citizens to make contracts concerning their callings or occupations by limiting the hours of their labor in employments possessing elements of danger and risk to the health of the employee.

ID.—GUARANTIES OF FEDERAL CONSTITUTION.—In determining whether an act limiting the hours of labor in any occupation is in violation of the guaranties of the fourteenth amendment of the federal constitution, the primary consideration is whether or not the occupation possesses such characteristics of danger to the health of those engaged in it as to justify the legislature in concluding that the welfare of the community demands a restriction.

ID.—ACT IS NOT SPECIAL LEGISLATION—OPERATION ON SPECIAL CLASS.— The act of March 10, 1909, is not violative of any of the provisions of the state constitution prohibiting special legislation, in arbitrarily selecting for its operation a special class of persons. A law is not special or lacking in uniformity merely because it does not apply to every person or subject within the state, provided the classification established by it is reasonable.

ID.—FAILURE TO INCLUDE OTHER DANGEROUS OCCUPATIONS.—That act is not special legislation because it fails to include in its scope other occupations which are equally dangerous to the health of the persons engaged in them. The selection of the businesses requiring regulation is confided to the legislative discretion, and this discretion is not subject to judicial review unless it clearly appears to have been exercised arbitrarily and without any show of good reason.

ID.—FAILURE TO APPLY TO ALL UNDERGROUND WORK.—The act is not obnoxious to the constitutional provisions against special legislation because the limitation of hours of labor does not apply to all underground work but only to work performed in mines.

ID.—ACT AND TITLE EMBRACE BUT ONE SUBJECT.—The act and the title thereof do not embrace more than one subject, within the meaning of section 24 of article IV of the constitution.

ID.—REQUIREMENT OF CONSECUTIVE HOURS OF EMPLOYMENT.—The provision of the act that the hours of employment, exclusive of the time

for meals, shall be consecutive, cannot be judicially held to have no reasonable relation to the protection of the health of the workmen. That question is one of legislative policy.

APPLICATION for a Writ of Habeas Corpus directed to the Constable of Angels Township, Calaveras County.

The facts are stated in the opinion of the court.

Solinsky & Wehe, and Paul C. Morf, for Petitioner.

James Keith, and Thos. S. Ford, for Respondent.

SLOSS, J.—Upon the application of Fred J. Martin a writ of *habeas corpus* was issued by this court. Martin had been arrested upon a charge of violating the terms of a statute entitled "An act regulating the hours of employment in underground mines and in smelting and reduction works" (Stats. 1909, c. 181, p. 279), approved March 10, 1909. The provisions of the act are as follows:—

"Section 1. That the period of employment for all persons who are employed or engaged in work in underground mines in search of minerals, whether base or precious, or who are engaged in such underground mines for other purposes, or who are employed or engaged in other underground workings whether for the purpose of tunneling, making excavations or to accomplish any other purpose or design, or who are employed in smelters and other institutions for the reduction or refining of ores or metals, shall not exceed eight hours within any twenty-four hours, and the hours of employment in such employment or work day shall be consecutive, excluding, however, any intermission of time for lunch or meals; provided that, in the case of emergency, where life or property is in imminent danger, the period may be a longer time during the continuance of the exigency or emergency.

"Sec. 2. Any person who shall violate any provision of this act, and any person who as foreman, manager, director or officer of a corporation, or as the employer or superior officer of any person, shall command, persuade or allow any person to violate any provision of this act, shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than fifty dollars ($50.00) nor more than three hundred dollars ($300.00), or by imprisonment of not

more than three months. And the court shall have discretion to impose both fine and imprisonment as herein provided.

"Sec. 3. All acts and parts of acts inconsistent with this act are hereby repealed."

It is not questioned by the petitioner that the complaint which furnished the basis for his arrest stated a violation of the terms of the act. His position is, however, that the act is void as being in contravention of constitutional provisions.

The ground of attack usually advanced in cases of this character,—namely, that the statute is in conflict with the guaranties of the fourteenth amendment to the constitution of the United States, is not here urged. Indeed, such contention is hardly open to the petitioner in view of the decision in *Holden* v. *Hardy*, 169 U. S. 366, [18 Sup. Ct. 383], where the supreme court of the United States decided that a statute of Utah, substantially identical in its main features with the one before us, did not deprive persons affected by it of any right conferred by the federal constitution. Conceding the binding force of that decision as an adjudication of all federal questions involved, the petitioner here bases his claim to immunity from prosecution upon certain provisions of the constitution of this state.

Before proceeding to a consideration of the particular points made in this connection, it may be well to briefly state the basis of the decision in *Holden* v. *Hardy*, since, in our opinion, the points there decided go far toward answering the main objections predicated upon the state constitution. The right on the part of the state to restrict the freedom of citizens to make contracts concerning their callings or occupations was there upheld with respect to the particular callings covered by the Utah statute, i. e. mining and working in smelting and reduction works, upon the ground that the restriction in question was a proper exercise of the police power for the preservation of the public health. "The right of contract," says the court, "is itself subject to certain limitations which the state may lawfully impose in the exercise of its police powers. While this power is inherent in all governments, it has doubtless been greatly expanded in its application during the past century, owing to an enormous increase in the number of occupations which are dangerous, or so far detrimental to the health of employees as to demand special

precautions for their well-being and protection, or the safety of adjacent property. While this court has held . . . that the police power cannot be put forward as an excuse for oppressive and unjust legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances, and a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests." Again, in the same opinion, it is said that "while the general experience of mankind may justify us in believing that men may engage in ordinary employments more than eight hours per day without injury to their health, it does not follow that labor for the same length of time is innocuous when carried on beneath the surface of the earth, where the operative is deprived of fresh air and sunlight, and is frequently subjected to foul atmosphere and a very high temperature, or to the influence of noxious gases, generated by the processes of refining or smelting." The right to limit the hours of labor generally was not involved in *Holden* v. *Hardy*. No such right was asserted. It was, however, decided that the particular occupations affected by the act possessed such elements of danger and risk to the employee that the legislature might reasonably conclude that in such occupations a restriction of the time of labor was necessary for the protection of those engaged in such labor.

The limitations of the doctrine are well illustrated by the subsequent decision in *Lochner* v. *New York*, 198 U. S. 45, [25 Sup. Ct. 539], in which the court, reversing the decision of the court of appeals of New York in *People* v. *Lochner*, 177 N. Y. 145, [101 Am. St. Rep. 773, 69 N. E. 373], declared invalid a law limiting the hours of labor of bakers. The real ground of that decision is, we think, to be found in the following extract from the opinion of Mr. Justice Peckham: "We think that there can be no fair doubt that the trade of a baker, in and of itself, is not an unhealthy one to that degree which would authorize the legislature to interfere with the right to labor, and with the right of free contract on the part of the individual, either as employer or employee." The decision in the Lochner case was by a bare majority of the court, but the majority itself recognized the

correctness of the decision in *Holden* v. *Hardy* and distinguished that case upon the ground that the callings involved in the two statutes were essentially different.

It follows, from a comparison of these two decisions, that in determining whether an act limiting the hours of labor in any occupation is in violation of the provisions of the federal constitution, the primary consideration is whether or not the occupation possesses such characteristics of danger to the health of those engaged in it as to justify the legislature in concluding that the welfare of the community demands a restriction.

And this brings us to the petitioner's contention that the act is violative of the provisions of the state constitution respecting special legislation. It is contended that the act violates subdivision 2 of section 25 of article IV in that it is a special law for the punishment of a crime or misdemeanor created by said act; that it violates subdivision 35 of said section in that it is a special law passed in a case where a general law can be made applicable; that it violates section 21 of article I in that it grants to citizens or classes of citizens privileges or immunities which are not, upon the same terms, granted to all citizens; that it violates section 11 of article I as not being of uniform operation. These various specifications are in effect directed to the same point,—namely, that the law arbitrarily selects for its operation a special class of persons. It is, we think, unnecessary at this date to cite many authorities in support of the proposition that a law is not special or lacking in uniformity merely because it does not apply to every person or subject within the state. "An act to be general in its scope need not include all classes of individuals in the state; it answers the constitutional requirements if it relates to and operates uniformly upon the whole of any single class." (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383].)' The classification created for the purposes of legislation must, of course, be a reasonable one. The test of its propriety is well stated in *City of Pasadena* v. *Stimson*, 91 Cal. 238, [27 Pac. 604], where the court declared "that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the

exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." But in view of the decision in *Holden* v. *Hardy,* based as it was upon the fact that the occupations covered by this act were so peculiarly dangerous as to justify special regulation, how can it be said that the legislature in selecting these occupations and applying to them provisions designed to protect the health of those engaged in them was making "a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law?" The very grounds which led the supreme court of the United States to hold that the Utah statute did not deprive any person of life, liberty, or property without due process of law, nor deny to any person the equal protection of the laws, requires the conclusion that the legislation was not special within the meaning of our state constitution. (See *Julien* v. *Model B. L. & I. Co.,* 116 Wis. 79, [92 N. W. 561].) For if it could be said that the limitation of the hours of labor of miners and those engaged in smelting and reduction works could not be supported by any natural or intrinsic distinction between those occupations and others the legislation would, for the reasons declared in *Lochner* v. *New York,* necessarily fall before the provisions of the federal constitution.

The appellant relies with great confidence upon the decision of the supreme court of Colorado in *In re Morgan,* 26 Colo. 415, [77 Am. St. Rep. 269, 58 Pac. 1071]. In that case it was held that an act similar to the one under consideration was unconstitutional, this conclusion being based upon the ground, among others, that the law was "class legislation." We have not had access to the constitution of Colorado and are not informed of its precise terms regarding general and special legislation. It may be observed, however, that some of the grounds relied on by the Colorado court for its decision are clearly in conflict with the views of the supreme court of the United States in the Holden case. In other states having constitutional provisions directed against the passing of special laws, legislation of this character has been upheld. (*Ex parte Boyce,* 27 Nev. 299, [75 Pac. 1]; *Ex parte Kair,* 28 Nev. 127, [113 Am. St. Rep. 817, 80 Pac. 463]; *State* v. *Cantwell,* 179 Mo. 245, [78 S. W. 569].)

It is argued by the appellant that the act is special because it does not include in its scope many occupations other than mining which are equally dangerous to the health of the persons engaged in them. Reference is made, for example, to marble cutters and marble drillers, diamond cutters, workers in furnaces and laundries, men employed in wine cellars, breweries and ice-houses, men in boiler works, match-makers, cleaners of clothes, makers of white lead, of china and earthenware and many others.

The argument is, apparently, that any law is special which does not include all of these occupations. This view is obviously unsound. Whether these other occupations present the same dangers to health as those involved in mining, etc., and whether, if they do, these dangers can best be met by restricting the hours of labor, are primarily questions for the legislature. The legislature has determined one or both of them in the negative by enacting this law. The selection of the businesses requiring regulation is confided to the legislative discretion, and this discretion is not subject to judicial review unless it clearly appears to have been exercised arbitrarily and without any show of good reason. It certainly cannot be justly said to be apparent that each or any of the trades instanced by counsel is, in its effect upon the health of workers, identical with the occupations covered by the act under discussion, nor that the most appropriate method of counteracting any injurious effects pertaining to any of them is necessarily the same as that found to be suitable for miners and men working in smelting and reduction works. In other words, the law is not rendered special by the mere fact that it does not cover every subject which the legislature might conceivably have included in it. It is enough that the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment.

It may be questioned whether, in view of the title of the act, the limitation of hours applies to all underground work or only to that performed in mines. But if we assume, with petitioner, that only work in mines is covered, the act is not thereby rendered obnoxious to the constitutional provision against special legislation. This point was made in *State* v. *Cantwell*, 179 Mo. 245, [78 S. W. 569], and was met by the

answer that the discrimination between work in mines and that in other underground diggings was justified by the fact that mining is a permanent business in which men are engaged steadily for long periods of time, whereas other underground diggings are ordinarily temporary and irregular in duration and for that reason do not require the same measure of regulation.

The act and the title thereof do not embrace more than one subject. (Const., art. IV, sec. 24; *Ex parte Boyce*, 27 Nev. 299, [75 Pac. 1].) It is designed, as we have said, for the protection of the health of persons engaged in occupations regarded by the legislature as dangerous. Such occupations as in the legislative view were subject to the same kind of danger and which required the same kind of regulation could properly be joined together in one act. We may remark the inconsistency between the argument that the act is void because it covers different kinds of employment and petitioner's other contention that the act is void because it does not cover a greater number of employments.

Petitioner attacks the provision of the act that the hours of employment shall be consecutive (excluding, however, any intermission of time for lunch or meals). We are not prepared to say that this limitation bears no reasonable relation to the protection of the health of the workmen. The legislature may have considered that persons working in underground mines, in smelters, or in reduction works required for their protection, not only that the total number of hours of employment in a day should be limited, but that the hours of labor should be so adjusted as to allow the employee a long consecutive period for rest and recreation. This is a question of legislative policy with which the courts have no concern.

Upon the whole case, we are satisfied that the act is a valid exercise of the legislative power and that the petitioner is properly held.

It is ordered that the writ be dismissed and the petitioner remanded to the custody of the constable.

Shaw, J., Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.