[Crim. No. 2263. In Bank.—October 13, 1920.]

## In the Matter of the Application of E. B. REINEGER for a Writ of Habeas Corpus.

[1] Imitation Milk Act—Construction of Provisos of Section 2— Exceptions to Previously Stated Prohibition.—The provisos contained in section 2 of the act of 1919 regulating the sale of substances designated therein as imitation milk (Stats. 1919, p. 89), are not affirmative and prohibitory and intended to define a criminal offense, but merely state exceptions to the previously stated prohibition of the sale of products of imitation milk.

---

1. Constitutionality of statutes or ordinances regulating the sale of milk, notes, 4 Ann. Cas. 119; 18 Ann. Cas. 321.

What is "milk," note, Ann. Cas. 1912B, 388.

[2] ID.—SALE OF IMITATION MILK ITSELF NOT PROHIBITED.—The provision of section 2 of the act regulating the sale of substances therein designated as imitation milk that no person shall manufacture or sell any article, produce, or compound made wholly or in part out of imitation milk, does not absolutely prohibit the sale of the imitation milk itself.

[3] EVIDENCE—TRANSPORTATION OR STORAGE OF LIQUID GOODS—PACKING IN CASES—JUDICIAL NOTICE.—The courts may take judicial notice that liquid goods, such as imitation milk, are, for the purposes of transportation or storage, first inclosed by manufacturers and wholesale dealers in tightly sealed cans or bottles and then packed in boxes or other containers, which boxes or containers are called cases.

[4] IMITATION MILK ACT—LICENSE FEE—DETERMINATION OF BUSINESS OF DEALER—NUMBER OF CANS IN CASE IMMATERIAL.—Under the Imitation Milk Act, which imposes a different license fee upon wholesale dealers from retail dealers and which defines the former as including all persons who sell any of the substances in quantities of one full case or more at a time and the latter as all persons who sell in quantities of less than one case, in determining whether the business is wholesale or retail, the number of cans in each case is not material.

[5] STATUTORY CONSTRUCTION—WORDS.—A statute should always be so construed, if reasonably possible, as to give to each part thereof the meaning and effect which, from the act as a whole, appears to have been intended, and a narrow or restricted meaning should not be given to a word, if it would result in an evasion of the evident purpose of the act, when a permissible, but broader, meaning would prevent the evasion and carry out the purpose.

[6] IMITATION MILK ACT—SALE IN LARGE CONTAINERS—WHOLESALE DEALER.—Imitation milk sold in barrels, carboys, or large creamery cans containing larger quantities than would be sold to consumers in ordinary retail trade would be sold by the case as that word is defined in the dictionaries, and would come within the term "wholesale dealer" as used in the act.

[7] ID.—SALE BY WHOLESALERS IN CANS NOT ENCASED—ABSENCE OF PROHIBITION—PRESUMPTION AS TO LEGISLATIVE INTENT.—In view of the presumption in favor of legislative action, it must be assumed that the legislature concluded that there were no wholesale dealers engaged in the business of selling and delivering to retailers one-pound cans of imitation milk in large lots not encased, and so purposely omitted any provision for such cases.

4. Validity of statute requiring license for sale of milk, notes, 1 L. R. A. (N. S.) 936; 27 L. R. A. (N. S.) 1150; L. R. A. 1917C, 245.

[8] ID.—REGULATION OF SALE OF MILK SUBSTITUTE—POLICE POWER.—
A compound which is not milk but which resembles milk and
which for many purposes may be used as a substitute for milk
is subject to reasonable regulations under the police power, de-
signed to prevent it from being sold to consumers as real milk.

[9] HABEAS CORPUS—COMPLAINT—UNCERTAINTY AS TO OFFENSE—IN-
SUFFICIENT GROUND FOR RELEASE.—Where a complaint in a court
of inferior jurisdiction states facts showing that defendant has
committed a public offense, but is subject to attack by demurrer
on the ground that it is uncertain as to the particular offense
committed, the inferior court has jurisdiction and the defect will
not be ground for his release on habeas corpus.

PROCEEDINGS on Habeas Corpus to secure release from
custody on a charge of violating the Imitation Milk Act.
Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Thomas, Beedy & Lanagan, Theodore A. Bell, Raymond
Benjamin, Thomas E. Lannen and William Thomas for
Petitioner.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief
Deputy Attorney-General, and John H. Riordan, Deputy
Attorney-General, for Respondent.

John C. Macfarland, *Amicus Curiae.*

SHAW, J.—The petitioner, being imprisoned on the charge
of violating the act of 1919 (Stats. 1919, p. 89), regulating
the sale of substances designated therein as "imitation
milk," seeks his discharge upon a writ of *habeas corpus.*
He was arrested upon a warrant issued upon a complaint
filed in the police court of San Francisco.

The complaint alleges that "the crime of misdemeanor, to
wit, selling and offering for sale imitation milk, without first
obtaining a license therefor, was committed by E. B.
Reineger, who did then and there willfully and unlawfully
engage in the business of selling, dealing in and furnishing
imitation milk, namely, a compound composed of evaporated
skim milk and seven and eight-tenths per cent of edible vege-
table fat, without any other ingredient or ingredients, without
first having applied for and obtained a license so to do, and

did unlawfully sell, other than for cooking purposes, at one time, and in the same transaction, sixty cans of such imitation milk, each can containing one pound avoirdupois, which said imitation milk was not of a separate and distinct character not resembling milk or condensed or evaporated milk, nor colored nor containing any color or any ingredient or ingredients that caused it to look unlike pure, whole cow's milk or the condensed or evaporated product made therefrom.'' It further alleged that each can was labeled to show that it was a compound of evaporated skim milk and vegetable fat containing seven and eight-tenths per cent vegetable fat and twenty-five and five-tenths per cent total solids.

It is claimed on behalf of the respondent that the complaint charges two offenses, the first under section 2 of the act and the second under section 6 of the act. Section 2 has no reference to the obtaining of a license while section 6 forbids the sale of milk by any person who has not obtained a license therefor as therein provided. We are satisfied that no offense is charged under the provisions of section 2, the material parts whereof are as follows:

''Sec. 2. No person by himself, his agents or servants shall render, manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell or to use, or to serve to patrons, customers, boarders or inmates of any hotel, dwelling-house, restaurant, public conveyance or boarding-house, any article, product or compound made wholly or in part, out of any imitation milk; *provided*, that nothing in this section shall be construed to prohibit the manufacture or sale, under regulations hereinafter provided, of imitation milk, of substances or compounds that may be used as imitation milk, of a separate and distinct character not resembling milk or condensed or evaporated milk, and in such a manner as will advise the purchaser and consumer of its real character, colored or containing ingredients that cause it to look unlike pure whole cow's milk or the condensed or evaporated produce made therefrom; . . . *and provided, further*, that nothing in this act shall be construed to prevent or prohibit the manufacture, sale, or use, for cooking purposes, of imitation milk as defined by section one of this act.''

The first clause of the complaint manifestly was intended to charge the selling of such milk without license and that offense only. The claim that an offense is charged under sec-

tion 2 is based on the second clause of the complaint. Upon
the general frame of the complaint it would appear that this
clause was intended merely as an additional definition of the
offense of selling without license. The claim is that it was not
so intended but that it is a charge of an offense under sec-
tion 2. Its language follows closely the language of the
provisions of section 2. [1] If it was intended as a charge
of a separate offense it could have been based only upon the
theory that the provisos in section 2 were affirmative and pro-
hibitory and were intended to define a criminal offense. The
mere reading of them shows clearly that they were not so in-
tended. They merely state exceptions to the previously stated
prohibition. They do not forbid any act nor define any of-
fense. (*In re Day*, 181 Ill. 79, [50 L. R. A. 519, 54 N. E.
646] ; *State* v. *Weeden*, 17 Wyo. 418, [100 Pac. 114] ; *Gaither*
v. *Wilson*, 164 Ill. 548, [45 N. E. 1019] ; 36 Cyc. 1162; 2
Sutherland on Statutory Construction, sec. 352.)

[2] It is argued that the first clause of the section ab-
solutely prohibits the sale of the imitation milk itself. It is
obvious that it was not so intended. An article or com-
pound made by evaporating from imitation milk the water
therein, or by any other separation of its ingredients without
adding others, would be made wholly out of imitation milk
and would come within the prohibition of the clause. But
by no ordinary use of language can it be said that an article
made wholly out of imitation milk is the same thing as the
imitation milk out of which it is made. The complaint does
not allege that the defendant sold any article, product, or
compound made wholly or in part out of any imitation milk.
The latter part of it charges merely that he did sell imita-
tion milk which was not so colored as to be unlike milk. The
first clause does not forbid such sale. Since it fails to state
an offense under section 2, the complaint can be upheld only
upon the theory that it purports to set forth a charge of sell-
ing imitation milk without license. This, we think, was the
real purpose of the pleader.

Section 6 declares that no person shall engage in the
business of selling imitation milk without first having ob-
tained a license so to do. For such license it provides that
wholesale dealers shall pay a fee of fifty dollars and retail
dealers a fee of five dollars. The petitioner concedes that
the complaint charges that he did engage in the business

without having obtained a license, but he claims that the section is void because of the uncertainty of its definitions of dealers, the uncertainty being of such a character, so it is argued, that no person in the business could determine from such definitions whether he was a wholesaler or a retailer. The two definitions in question are as follows: "The term 'wholesale dealer' as used in this section includes all persons, firms or corporations who sell any of said substances in quantities of one full case or more at a time or in the same transaction. The term 'retail dealer' includes all persons who sell in quantities of less than one case."

It is contended that the question whether a person carrying on the business is a "wholesale dealer" or a retail dealer depends entirely on the meaning of the word "case," that its meaning is altogether uncertain and indefinite, that, consequently, no one can determine the question, or ascertain from the section what sort of license a particular dealer must have or what amount he must pay as a license fee, and hence that the provisions requiring licenses to such dealers are incapable of enforcement and void.

The word "case," when used in that connection, is defined as "a box, sheath, or covering of any kind; . . . a box and its contents; . . . as a case of goods" (Webster's Dictionary, and also as "anything intended to enclose or contain something." (Standard Dictionary.) [3] It is common knowledge that liquid goods, such as imitation milk, are, for purposes of transportation or storage, first inclosed in tightly sealed cans or bottles and then packed in boxes or other containers, each containing a number of the cans or bottles. This is done either by the manufacturer or by wholesale dealers who buy from the factory. Of this fact the courts may take judicial notice. Such boxes or containers are called cases. In each kind of goods usually a fixed number of cans or bottles are packed in each case and such number is well known to all persons engaged in trade in such goods, whether wholesalers or retailers. In any action wherein the number contained in each case was a fact material to the cause of action, or charge, it would be necessary to allege and prove the usage in that particular trade as to the number of cans or bottles packed in each case, or if there were cases of different sizes in use, the number in each size, if that were a material fact.

But as the facts that wholesalers sell and ship such goods in cases as above stated and that retailers do not are of common knowledge, the word "case" has a definite meaning when used to distinguish a wholesaler from a retailer. It refers to the boxes in which the cans are packed and shipped and it includes the contents of such cases, whether a small or a large number of cans is encased. [4] In determining whether the business is wholesale or retail, the number in each case is not material. The one selling by cases would be a wholesaler, regardless of the number of cans in a case; the one selling less than a case at a time would be a retailer. A sale, in the sense here used, would include the delivery. A change in the number of cans packed in a case by the usage of the trade, or by a particular wholesaler, would not affect the question.

If, as suggested, imitation milk were sold by wholesalers in bulk, as in barrels or carboys or large creamery cans, without being put in small cans or bottles for the retailer, and the retailer should adopt the custom of selling to consumers in pint or quart vessels brought in by the consumer or furnished by the retailer and filled from such bulk containers, no difficulty need arise in applying the law. [5] A statute should always be so construed, if reasonably possible, as to give each part thereof the meaning and effect which, from the act as a whole, appears to have been intended. A narrow or restricted meaning should not be given to a word, if it would result in an evasion of the evident purpose of the act, when a permissible, but broader, meaning would prevent the evasion and carry out that purpose. A barrel, carboy, or a creamery can, used to contain larger quantities of the milk than would be sold to consumers in ordinary retail trade, would be a "sheath or covering" for the milk, a thing intended to contain the milk, and therefore it would be included in the general definition of the word "case." [6] One who was engaged in the business of selling the milk in such packages would be selling by the "case," and consequently a wholesale dealer, as defined in the section.

[7] A wholesaler who engaged in the business of selling and delivering to retailers the one-pound cans in large lots not encased at all, but merely piled into box-cars or trucks, would be so rare that he would be in a class by himself, and we may safely leave his case to the next legislature.

The possibility does not appear so great as to require us to annul the section for fear that there may be an unjust discrimination in his favor if it is held valid. In view of the presumption in favor of legislative action, we must assume that the legislature, upon a survey of the field, concluded that there were no dealers carrying on business in that manner and that it was improbable that there ever would be, and so purposely omitted any provision for such cases. (*Ex parte Martin*, 157 Cal. 57, [26 L. R. A. (N. S.) 242, 106 Pac. 235]; *Ex parte Miller*, 162 Cal. 698, [124 Pac. 427].)

The complaint does not purport to charge a violation of sections 4 and 5 of the act, or of either of them. It is therefore unnecessary to consider the objections urged to the validity of those sections.

[8] The proposition that a compound of this kind which is not milk, but which resembles milk, and which for many purposes may be used as a substitute for milk, is subject to reasonable regulations under the police power, designed to prevent it from being sold to consumers as real milk, is settled by the decision of the supreme court of the United States in *Hebe Co.* v. *Shaw*, 248 U. S. 297, [63 L. Ed. 255, 39 Sup. Ct. Rep. 125]. Some of the regulations in this act may be unreasonable, but as they are not so interwoven with the provisions requiring a license and other parts of the act as to be inseparable and thereby invalidate the entire act, we need not consider the question.

It may be that the complaint is uncertain because it does not state whether the petitioner is a wholesale dealer or a retail dealer as defined in the act. It does not allege whether the sixty cans sold amounted to one full case or not. *Habeas corpus* lies in such cases only when the magistrate is without jurisdiction to issue the warrant of arrest. [9] Where a complaint in a court of inferior jurisdiction states facts showing that the defendant has committed a public offense, but is subject to attack by demurrer on the ground that it is uncertain as to the particular offense committed, the inferior court has jurisdiction and the defect will not be ground for his release on *habeas corpus*. (*Ex parte McNulty*, 77 Cal. 166, [11 Am. St. Rep. 257, 19 Pac. 237].) There is nothing in *Ex parte Kearney*, 55 Cal. 212, or *Ex parte Greenall*, 156 Cal. 767, [96 Pac. 804], that is

contrary to this rule. The complaints there considered failed to show that the defendant had committed any offense whatever.

The writ is discharged and the petitioner is remanded to the custody of the proper officer.

Olney, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.

SLOANE, J., Dissenting.—I dissent from that portion of the main opinion construing section 2 of the act. In my judgment it was clearly the intention of the legislature to prohibit the sale of imitation milk. I concur in the rest of the opinion.

Wilbur, J., concurred.