[S. F. No. 11128. In Bank.—June 28, 1924.]

## JAMES MARTIN, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[Crim. No. 2683. In Bank.—June 28, 1924.]

## In the Matter of the Application of FRED W. CHAPMAN for a Writ of Habeas Corpus.

[S. F. No. 11139. In Bank.—June 28, 1924.]

## GEORGE ANASTASION, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[1] CONSTITUTIONAL LAW—CLASSIFICATION OF PERSONS OR THINGS—BASIS OF DISTINCTION.—Where a classification of persons or things is distinctive and such distinction is based upon some "constitutional, or natural, or intrinsic distinction," laws may be made applicable to such class alone, providing the act is uniform as to all persons or things within such class.

[2] JURIES AND JURORS—SELECTION OF JURORS—SECTION 204, CODE OF CIVIL PROCEDURE, AS AMENDED IN 1923—CONSTITUTIONAL LAW. That portion of section 204 of the Code of Civil Procedure as amended in 1923 (Stats. 1923, c. 195, p. 436), relating to the selection of jurors, which provides that, "In counties and cities and counties having a population of ninety thousand inhabitants or over, such selection shall be made by a majority of the judges of the superior court," is not a special law; it is a general law having a uniform operation upon a class of persons or things readily and naturally differentiated from another class of persons or things by reason of the necessities peculiar to the subject matter of the legislation.

[3] CONSTITUTIONAL LAW—SPECIAL LAWS—CLASSIFICATION BY LEGISLATURE.—A law is not special legislation merely because it does not apply to all persons; the legislature may classify for the purpose of meeting different conditions, naturally requiring different legislation, in order that legislation may be adapted to the needs of the people. If the law is to bear equally upon all persons, the legislature must classify whenever there exists a reason which may rationally be held to justify a diversity of legislation; in other words, different persons, different localities, and different governmental organization and agencies may justly be found by the legislature to stand in different relations to the law, and if the

same law were, in such a situation, to be applied to all alike, it would not bear equally upon each of them.

[4] ID.—CHARACTER OF CLASSIFICATION.—The classification by the legislature must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation; that is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation. Subject to these limitations a law is general despite the fact that it operates only upon a class of individuals or things, if it applies equally to all persons or things within the class to which it is addressed.

[5] ID.—FACTS JUSTIFYING CLASSIFICATION—LEGISLATURE — PRESUMPTIONS—COURTS.—The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason.

[6] ID.—CLASSIFICATION — JUDICIAL NOTICE — COURTS. — In any given case if the existence of a state of facts of which the court may take judicial notice seems to have been made the basis of a particular piece of legislation and if it may be reasonably said that such facts afford good ground for the making of a particular classification, the legislative enactment will be upheld although the reason therefor does not appear *prima facie* in the law itself.

[7] JURIES AND JURORS—CLASSIFICATION MADE BY SECTION 204, CODE OF CIVIL PROCEDURE—BASIS FOR—CONSTITUTIONAL LAW.—It cannot be said that the classification made by the legislature in providing by the 1923 amendment to section 204 of the Code of Civil Procedure that in counties and cities and counties having a population of ninety thousand inhabitants or over the selection of jurors shall be made by a majority of the judges of the superior court, is palpably arbitrary and was made merely for the purpose of a classification which bears no relation to the inherent purpose of the law, the amendment in question doubtless having been enacted in order to facilitate and expedite the work of the superior courts in the more populous counties of the state.

[8] ID.—CLASSIFIED LEGISLATION — JUDICIAL NOTICE. — In determining the need and propriety of classified legislation, where the same does not appear upon the face of the legislative enactment, the court may resort to its judicial knowledge of the contemporaneous

conditions and situation of the people, the existing economic, socio-logic, and civic policy of the state and all other matters of common knowledge.

[9]. ID.—SELECTION OF JURORS—JUDICIAL NOTICE.—It is a matter of common knowledge, to be noticed judicially, that there are several counties of the state each possessing a population many times greater than the population of each of the remaining counties of the state; that the counties with the greater populations have vastly more court business and consequently require many more trial jurors than the less populous counties; that the boards of supervisors of the counties of the greater population have a larger, more continuous and complicated volume of official business to deal with and dispose of than do the boards of supervisors of the many less populous counties; that the boards of supervisors of the more populous counties are personally acquainted with only a comparatively small percentage of their constituents and, therefore, less qualified to determine who, among their constituents, possess the degree of moral and intellectual fitness requisite for jurors, than are the boards of supervisors of the less populous counties who are ordinarily in closer communication with their constituents; that the judges of the superior courts, coming as they do constantly in contact with the personnel of trial jurors, are, by reason of their observation and experience, well qualified to perform the duties of selecting and listing persons to serve as trial jurors; and that in a situation where the persons to be selected as trial jurors in the more populous counties are not personally known to the boards of supervisors, the judges of the superior court, doubtless, are better qualified to make the required selection than the boards of supervisors who, because of their multitudinous duties incidental to the government of such counties, cannot be expected to give the time and thought requisite to the selection of trial jurors.

[10] ID.—REDUCTION OF NUMERICAL BASIS OF CLASSIFICATION—POWER OF LEGISLATURE.—The power of determining the numerical basis of the classification of counties in the matter of selection of jurors rested with the legislature and having the power to fix the limit of population at one hundred thousand to which, in the first instance, the legislation applied, the legislature had the power to reasonably reduce the numerical limits of population whenever, in the exercise of a wise discretion, the exigencies of a given situation so required; in other words, "where the discretion so to classify is vested in the legislature, the selection of a limit is a legislative power which will be judicially reviewed only in the plain case of abuse."

[11] ID. — JURY COMMISSIONER — PUBLIC OFFICERS — CONSTITUTIONAL LAW.—The provision of section 204 of the Code of Civil Procedure which provides for and permits the appointment of a jury commissioner, in certain designated counties, to assist the judges

of the superior courts of those counties in making selections of
trial and grand jurors does not create a state or county office, and
the jury commissioner, when appointed, like other attachés of the
judicial system of the state, is no more than an adjunct of that
system acting in the capacity of a mere employee to enable the
court to transact its judicial work in an orderly and expeditious
manner and is an adjunct "which the legislature . . . has the
right to provide for when it deems necessary."

(1) 12 C. J., pp. 1129, 1134, secs. 855, 858; 30 Cyc., pp. 992, 993.
(2) 36 Cyc., p. 987.   (3) 12 C. J., p. 1129, sec. 855; 36 Cyc., p. 986.
(4) 12 C. J., p. 1130, sec. 855; 36 Cyc., p. 985.   (5) 12 C. J.,
pp. 794, 891, 1129, 1130, secs. 222, 390, 855.   (6) 12 C. J., pp. 787,
1129, secs. 219, 855 (1926 Anno.).   (7) 12 C. J., p. 1134, sec. 858.
(8) 12 C. J., p. 787, sec. 219 (1926 Anno.).   (9) 23 C. J., pp. 59,
161, secs. 1810, 1987.   (10) 12 C. J., p. 1130, sec. 855.   (11) 35
C. J., pp. 258, 259, sec. 205 (1926 Anno.).

PROCEEDINGS in Prohibition to restrain the Superior
Court of Sacramento County from proceeding to a trial of
certain actions; and proceeding in *habeas corpus* to secure
release from judgment of contempt of court. Writs of
prohibition denied; writ of *habeas corpus* denied.

The facts are stated in the opinion of the court.

S. Luke Howe, R. B. Hibbitt, Markham Johnston, O. F.
Meldon and T. A. Farrell for Petitioner in S. F. No. 11128.

Edward T. Bishop, County Counsel, Roy W. Dowds, Dep-
uty County Counsel, R. Platnauer and Wm. H. Devlin,
*Amici Curiae.*

Thomas B. Leeper for Petitioner in Crim. No. 2683.

J. J. Henderson, District Attorney, and Wm. V. Cowan,
Assistant District Attorney, for Respondents in Crim. No.
2683.

Wm. H. Devlin, Edward T. Bishop, County Counsel, and
Roy W. Dowds, Deputy County Counsel, *Amici Curiae* in
support of petition in Crim. No. 2683.

T. A. Farrell for petitioner in S. F. No. 11139.

Edward T. Bishop, County Counsel, Roy W. Dowds, Deputy County Counsel and Wm. H. Devlin, *Amici Curiae* in S. F. No. 11139.

LENNON, J.—The three above-entitled cases, although differing in the facts which form the basis of the respective petitions, present precisely the same legal questions for decision. Each petition attacks the legality of the procedure provided for the selection and listing of trial jurors in certain counties of the state of which the county of Sacramento is one.

In the matter of the application of Fred W. Chapman, the petitioner seeks his release upon *habeas corpus* from a judgment adjudging him guilty of contempt of court in refusing to answer a summons to appear and serve as a trial juror and in refusing to act as a trial juror in the superior court of the county of Sacramento. The petitioner, Chapman, was summoned pursuant to the procedure provided by section 204 et seq. of the Code of Civil Procedure.

The petitioners in the Anastasion case and the Martin case seek writs of prohibition to have the superior court in and for the county of Sacramento restrained from proceeding to a trial of the causes, in which they are respectively defendants, with a jury composed of persons selected to serve as trial jurors in said court for the year 1924.

In the Anastasion case the petitioner was charged with unlawfully having in his possession intoxicating liquor in violation of the Wright Act (Stats. 1921, p. 79) with two prior convictions. Thereafter he was arraigned and pleaded not guilty and his case was set for trial for the thirtieth day of April, 1924. The manner and method of listing and selecting the persons to serve as trial jurors in the said superior court and from whom the jurors were to be drawn for the trial of the two last-mentioned cases followed the provisions of the code sections last above referred to.

A discussion and a decision of the facts and the law as applied to the Martin case will suffice as a basis for the decision in the other two cases.

The petition for a writ of prohibition in the Martin case is predicated upon the following facts: The petitioner was on the twenty-seventh day of November, 1923, indicted by the grand jury of the county of Sacramento for the crime of

194 Cal.—7

murder.   Thereafter, the petitioner was duly arraigned upon said charge and thereupon pleaded not guilty.   Subsequently the cause was set down for trial upon a designated day. Thereafter, at a time some several weeks in advance of the date set for the trial of the cause, a majority of the judges of said superior court made and entered a court order directed to one Matt P. Barnes, as "Jury Commissioner of Sacramento County," to return to said court within a specified time a list of one hundred qualified persons to act as trial jurors in civil and criminal causes during the ensuing year. Thereafter, pursuant to said order, the said Barnes, as jury commissioner, returned to said court a list of persons qualified to act as jurors.   Whereupon, the said judges selected each and all of said persons to serve as trial jurors in said court for the ensuing year of 1924.   Subsequently the judge of department one of said court, wherein the charge of murder was and is pending against the petitioner, made and entered an order directing the clerk of said court to draw from the regular trial jury-box of said county, in which were the names, and only the names, of persons returned and selected in the first instance as aforesaid, the names of seventy-five persons from which would be drawn the names of the persons to serve as trial jurors during the April session of said superior court.   Upon said drawing being made the court directed to be issued and placed and there was issued and placed in the hands of the sheriff of the county a venire for the summoning of said persons returnable April 14, 1924. Thereafter, the said sheriff returned said venire to said court, together with his return thereon, specifying the names of said jurors so summoned.

Prior to the filing herein of the Martin petition, the said superior court, over the objection of the petitioner, declared its intention and purpose to proceed with the trial of the case of the said petitioner, now pending in said court, with the persons so as aforesaid selected to serve as trial jurors in said court.

In support of the petition for the writ of prohibition, it is contended that that portion of section 204 of the Code of Civil Procedure as amended in 1923 (Stats. 1923, c. 195, p. 436) relating to the selection of jurors, which provides that, "In counties and cities and counties having a population of ninety thousand inhabitants or over, such selection shall

be made by a majority of the judges of the superior court . . . , '' is unconstitutional and void in that it violates those provisions of the state constitution which provde that,

(1) "All laws of a general nature shall have a uniform operation." (Art. I, sec. 11.)

(2) "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (Art. I, sec. 21.)

(3) "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say; . . . Regulating the practice of courts of justice. . . . Summoning and impaneling grand and petit juries, and providing for their compensation. . . . " (Art. IV, sec. 25, subds. 3 and 8.)

While the petitioner refers to and relies upon all of the sections of the constitution above quoted, nevertheless the sum and substance of the argument made in support of the petition is condensed into the one proposition, that the law in question is special legislation in that it does not uniformly apply to and operate upon all persons and things throughout the state.

Section 204 of the Code of Civil Procedure as it existed prior to 1923 provided in substance and effect that the superior court of each county, in the month of January of each year, should designate the estimated number of grand and trial jurors required for the transaction of the business of the court and the trial of causes therein during the ensuing year; that the court should select and list the grand jurors, and that immediately after the making of the order designating the estimated number of trial jurors, "the board of supervisors shall select . . . a list of men and women to serve as trial jurors . . . during the ensuing year, . . . " It will be noted that the section in question, as it existed prior to 1923, contained the further provision that, "In counties and cities and counties having a population of one hundred thousand inhabitants or over, such selection shall be made by a majority of the judges of the superior court."

By the amendment in question, as enacted in 1923, the basis of classification for the purpose of selecting and returning jurors for courts of record was changed from

counties and cities and counties having a population of one hundred thousand inhabitants or over to counties and cities and counties having a population of ninety thousand inhabitants or over.

[1] It is conceded, as indeed it must be, that where a classification of persons or things is distinctive and such distinction is based upon some "constitutional, or natural, or intrinsic distinction," laws may be made applicable to such class alone, providing the act is uniform as to all persons or things within such class. But it is argued in the instant case that there is no "constitutional, or natural or intrinsic distinction" inherent in the procedure and practice requisite for the selection and listing of trial jurors in counties having a population of ninety thousand or over and the procedure and practice required for the same purpose in the remaining counties of the state having smaller populations.

[2] The amendment under consideration is not, in our opinion, a special law. It is a general law having a uniform operation upon a class of persons or things readily and naturally differentiated from another class of persons or things by reason of the necessities peculiar to the subject matter of the legislation. [3] A law is not special legislation merely because it does not apply to all persons. It is a settled principle of constitutional law that the legislature may classify for the purpose of meeting different conditions, naturally requiring different legislation, in order that legislation may be adapted to the needs of the people. If the law is to bear equally upon all persons, the legislature must classify whenever there exists a reason which may rationally be held to justify a diversity of legislation. In other words, different persons, different localities, and different governmental organizations and agencies may justly be found by the legislature to stand in different relations to the law and if the same law were, in such a situation, to be applied to all alike, it would not bear equally upon each of them. (*Darcy* v. *Mayor etc. of San Jose*, 104 Cal. 642 [38 Pac. 500]; *In re Sumida*, 177 Cal. 388 [170 Pac. 823].)

[4] The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself

be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation. Subject to these limitations a law is general despite the fact that it operates only upon a class of individuals or things, if it applies equally to all persons or things within the class to which it is addressed. (*Pasadena* v. *Stimson,* 91 Cal. 238 [27 Pac. 604]; *McDonald* v. *Conniff,* 99 Cal. 386 [34 Pac. 71]; *Darcy* v. *Mayor etc. of San Jose, supra; People* v. *Central Pac. R. R. Co.,* 105 Cal. 576 [38 Pac. 905]; *Deyoe* v. *Superior Court,* 140 Cal. 476 [98 Am. St. Rep. 73, 74 Pac. 28]; *Ruperich* v. *Baehr,* 142 Cal. 190 [75 Pac. 782]; *Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289 [119 Am. St. Rep. 199, 8 L. R. A. 682, 88 Pac. 356]; *Ex parte King,* 157 Cal. 161 [106 Pac. 578]; *Matter of Application of Martin,* 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235]; *Matter of Application of Miller,* 162 Cal. 687 [124 Pac. 429]; *Gridley* v. *Fellows,* 166 Cal. 765 [138 Pac. 355]; *In re Sumida, supra; In re Morganstern,* 61 Cal. App. 702 [215 Pac. 721].)

The power to thus classify necessarily carries with it a wide discretion in the exercise thereof. **[5]** The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason. (*In the Matter of a Proceeding to Validate the Sutter-Butte By-Pass Assessment No. 6 of the Sacramento and San Joaquin Drainage District,* 191 Cal. 650 [218 Pac. 27].) **[6]** It follows that in any given case if the existence of a state of facts of which the court may take judicial notice seems to have been made the basis of a particular piece of legislation and if it may be reasonably said that such facts afford good ground for the making of a particular classification the legislative enactment will be upheld although the reason therefor does not appear *prima facie* in the law itself. (*Stevenson* v.

*Colgan,* 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089] ; *Grumbach* v. *Lelande,* 154 Cal. 679 [98 Pac. 1059].; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 Pac. 207] ; *Matter of Application of Martin, supra; Ex parte King, supra; Matter of Petition of Burke,* 160 Cal. 300 [116 Pac. 755] ; *In re Sumida, supra; Bacon* v. *Walker,* 204 U. S. 311 [51 L. Ed. 499, 27 Sup. Ct. Rep. 289, see, also, Rose's U. S. Notes].)

[7] It cannot be said that the classification made by the legislature in the instant case is palpably arbitrary and was made merely for the purpose of a classification which bears no relation to the inherent purpose of the law. To the contrary, we are of the opinion that good and sufficient reason existed for the classification. The amendment in question doubtless was enacted in order to facilitate and expedite the work of the superior courts in the more populous counties of the state. Manifestly, the plan of having trial jurors in such counties selected by a majority of the judges of the superior courts rather than by the board of supervisors of the county tends to promote the efficiency and expedition of the business of the courts.

[8] In determining the need and propriety of classified legislation, where the same does not appear upon the face of the legislative enactment, the court may resort to its judicial knowledge of the contemporaneous conditions and situation of the people, the existing economic, sociologic, and civic policy of the state and all other matters of common knowledge. [9] It is a matter of common knowledge, to be noticed judicially, that there are several counties of the state each possessing a population many times greater than the population of each of the remaining counties of the state; that the counties with the greater populations have vastly more court business and consequently require many more trial jurors than the less populous counties; that the boards of supervisors of the counties of the greater population have a larger, more continuous and complicated volume of official business to deal with and dispose of than do the boards of supervisors of the many less populous counties; that the boards of supervisors of the more populous counties are personally acquainted with only a comparatively small percentage of their constituents and, therefore, less qualified to determine who, among their constituents, possess the degree

of moral and intellectual fitness requisite for jurors, than are the boards of supervisors of the less populous counties who are ordinarily in closer communication with their constituents; that the judges of the superior courts, coming as they do constantly in contact with the personnel of trial jurors, are, by reason of their observation and experience, well qualified to perform the duties of selecting and listing persons to serve as trial jurors; and that in a situation where the persons to be selected as trial jurors in the more populous counties are not personally known to the boards of supervisors, the judges of the superior court, doubtless, are better qualified to make the required selection than the boards of supervisors who, because of their multitudinous duties incidental to the government of such counties cannot be expected to give the time and thought requisite to the selection of trial jurors. From the foregoing facts the conclusion is readily deducible and doubtless was deduced by the legislature when enacting the legislation in question, that in counties having a small population the boards of supervisors have both the requisite time and frequent opportunity for observation requisite to the selection of the limited number of trial jurors required to serve the needs of the courts in these counties, and that the boards of supervisors of the more populous counties have not the requisite opportunity because of their other multitudinous duties and lack of personal acquaintance to personally and properly select the large number of trial jurors required in the more populous counties, and for that reason it may be said that the distinction which the legislature drew between the known situation existing in counties having a population of ninety thousand and over and counties having a lesser population was a natural and intrinsic distinction which amply justified the legislation complained of. In short, there is good reason for the distinction made by the amendment and a most natural one. The classification being permissible it is not, and cannot be, denied that the law purports to; and undoubtedly does, in its operation and effect, apply equally and uniformly to all persons and things falling within the designated class.

The case of *In re Brady*, 65 Cal. App. 345 [224 Pac. 252], cited and relied upon in support of the contention that the legislature has no power to make the classification

complained of in the instant case, is not in conflict with anything decided here. There the court had under consideration the question of whether or not an amendment to the Code of Civil Procedure (secs. 73 and 142, Stats. 1923, c. 42, p. 78), which provided that one session of the superior court should be held in each city containing a population of not less than fifty thousand, *located in counties of the first class,* whose city hall was not less than fifteen miles distant from the site of the county courthouse, was unconstitutional in that it was special legislation. The court there, speaking through Mr. Justice Houser, recognized and reaffirmed the settled rule that a statute even though it does not purport to apply to all of the people of the state is not special legislation and therefore unconstitutional if it applies to and affects all individuals and things embraced within a proper classification, and then held that the classification made by the legislature in that case was not a proper classification for the reason that, having in mind the purpose of the statute, no constitutional, natural or intrinsic distinction existed between cities containing a population of not less than fifty thousand, located in counties of the first class, and cities containing a population of not less than fifty thousand, located in counties not of the first class. We are satisfied that the conclusion reached in the case last cited is correct and we are in substantial accord with the reasoning upon which that conclusion is based. Obviously, the situation presented in the instant case is distinctly different from the situation presented in the Brady case in this, that in the instant case, a natural and intrinsic difference as a basis for the classification is readily discernible, whereas in the Brady case no sufficient reason existed or could be conceived for the classification there held to be unconstitutional.

The point is suggested rather than argued that the legislation in question is special legislation in that the numerical basis of classification was reduced from one hundred thousand to ninety thousand for the express purpose of admitting Sacramento County into the group of larger counties. [10] It will suffice to say that it does not appear upon the face of the legislation that this was the purpose of the legislature and while it may, nevertheless, well be argued that that was the legislative purpose and intent, still the fact remains that the power of determining the numerical basis

of the classification rested with the legislature and having the power to fix the limit of population at one hundred thousand to which, in the first instance, the legislation applied, there can be no doubt it seems to us that the legislature had the power to reasonably reduce the numerical limits of population whenever, in the exercise of a wise discretion, the exigencies of a given situation so required. In other words, "where the discretion so to classify is vested in the legislature, the selection of a limit is a legislative power which will be judicially reviewed only in the plain case of abuse." (*Matter of the Petition of Burke, supra.*)

Incidental to the main point presented in support of the petition, it is argued that sections 204a to and including 204e of the Code of Civil Procedure are violative of article I, section 21, of the constitution, in that the appointment of a jury commissioner and the listing of juries by him is made optional with the judges of the superior courts in the various counties wherein the provisions of these sections purport to have operation and effect. The constitutional provision last above referred to has to do and deals only with special privileges or immunities and we fail to perceive, and counsel for the petitioner has not pointed out, how or in what manner the appointment of a jury commissioner as a part of the judicial system of the state to serve certain designated courts can be construed and counted a special privilege or immunity within the meaning of those constitutional provisions. The most that we can make out of the contention of the petitioner in this particular is that the creation of the office of jury commissioner is tantamount to the creation of a county office, and being optional with the judges of the courts wherein such appointment may be made runs counter to the uniformity of the system of county government prevailing throughout the state. The case of *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120], is cited in support of the contention thus apparently made. That case is readily distinguishable from and has no application to the situation here. There it was held in effect that a legislative enactment giving to boards of supervisors the power, at their option, to appoint a county engineer in the place and stead of the county surveyor permitted the creation of a county office contrary to the constitutional provisions (art. XI, sec. 4) which contemplate and command a uniform system of county government.

[11] The provision of the statute under consideration in the instant case which provides for and permits the appointment of a jury commissioner, in certain designated counties, to assist the judges of the superior courts of those counties in making selections of trial and grand jurors does not create a state or county office, and the jury commissioner, when appointed, like other attachés of the judicial system of the state, is no more than an adjunct of that system acting in the capacity of a mere employee to enable the court to transact its judicial work in an orderly and expeditious manner and is an adjunct "which the legislature we do not doubt has the right to provide for when it deems necessary." (*Noel* v. *Lewis*, 35 Cal. App. 658, 662 [170 Pac. 857, 859].)

The writ of *habeas corpus* heretofore issued in the Chapman case is dismissed and the petitioner remanded to the custody from whence he came.

The order to show cause heretofore issued in the Anastasion case is dismissed and the petition for a peremptory writ of prohibition is denied.

The order to show cause heretofore issued in the Martin case is dismissed and the petition for a peremptory writ of prohibition is denied.

Richards, J., Waste, J., Lawlor, J., Seawell, J., Shenk, J., and Myers, C. J., concurred.